UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-82-H

CAUDILL SEED AND WAREHOUSE COMPANY INC.,                    PLAINTIFF

V.

JARROW FORMULAS, INC.,                                       DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Caudill Seed and Warehouse Company, Inc. ("Caudill Seed") filed suit against Defendant Jarrow Formulas, Inc. ("Jarrow") over alleged wrongdoing in connection with Jarrow's interactions with and hiring of Caudill Seed's former Director of Research, Kean Ashurst. Jarrow moved to dismiss and to strike the amended complaint. The Court denied Jarrow's motion to strike. The Court now addresses Jarrow's motion to dismiss. For the reasons that follow, the Court will sustain the motion in part and deny it in part.

I.

The facts of the case are mostly undisputed at this point. Caudill Seed produces and supplies organically-produced agricultural products for consumers, including turf seeds, sprouting seeds, beans and related equipment to dealers and distributors in the commercial sprouting industry. It specializes in isolating and developing compounds from broccoli seeds and sprouts. Jarrow is a former customer of Caudill Seed, which manufactures, formulates, markets, sells and distributes dietary supplements. Caudill Seed maintains that Jarrow is a competitor, while Jarrow claims the two operate in distinct industries.

Caudill Seed hired Ashurst in July of 2002. Ashurst occupied a number of positions within the company, ultimately serving as the Director of Research. In this position, Ashurst was

privy to Caudill Seed's proprietary and confidential information. Of particular importance was his access to a research notebook containing recorded results of research, formulas, and processes Ashurst and others performed, and a hard drive that largely stored the same material. He maintained exclusive control over the notebook, hard drive, and other documents and information. Ashurst knew that this research and information was critical for an upcoming industry conference and for securing two new major accounts.

Ashurst submitted his resignation to Caudill Seed on May 2, 2011. On the same day, Jarrow placed Ashurst on its payroll.[1] However, Caudill Seed claims that the relationship between Jarrow and Ashurst began months earlier. Caudill Seed alleges that in email correspondence between Ashurst and Jarrow in the period before his resignation, Jarrow knowingly requested and accepted confidential and proprietary information belonging to Caudill Seed from Ashurst. Caudill further alleges that Jarrow conspired with, encouraged, and directed Ashurst in wrongfully converting and sharing this information with Jarrow and its affiliates.

According to Caudill Seed, after Ashurst resigned, he informed a Caudill Seed officer that he possessed confidential and proprietary information. Now officially working for Jarrow, Ashurst proposed to assist Caudill Seed in restructuring some of the research and data removed from the company in exchange for Caudill Seed signing a waiver of all claims and a general release absolving him and Jarrow of any wrongdoing. When the officer asked to see the release and have a lawyer examine it, Ashurst refused and left the meeting.

Caudill Seed filed suit against Ashurst in Jefferson Circuit Court on May 17, 2011.[2] Jarrow is not a party to that action, which is presently pending. In December of 2011, Judge Shultz Gibson entered an Agreed Protective Order directing that any document labeled

---

[1] Jarrow considers Ashurst a consultant, operating as an independent contractor for the company.
[2] That case is styled *Caudill Seed & Warehouse Company, Inc. v. Kean Ashurst*, 11-CI-3438 (Jefferson Circuit Court, Div. 12, May 17, 2011).

confidential or highly confidential shall not be disclosed or used in any way other than in connection with that action ("Protective Order"). Accordingly, the parties have not submitted to the Court the emails that serve as the principal evidence against Jarrow.

After Caudill Seed filed suit in state court, it filed suit in this Court against Jarrow, as Ashurst's employer, alleging the following six counts: Tortious Interference (Count I); Wire Fraud-Theft by Deception-Conversion (Count II); Unjust Enrichment (Count III); Extortion – Hobbs' Act Violation (Count IV); Fraud, Outrageous Conduct – Punitive Damages (Count V); and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1861-68 ("RICO") (Count VI). Jarrow now moves to dismiss each Count, except for Count III. The Court will separately address Jarrow's arguments as to each count.

## II.

Jarrow moves to dismiss five of six of Caudill Seed's counts under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citation omitted). When reviewing Jarrow's motion, the Court will construe the complaint in a light most favorable Caudill Seed, accepting all factual allegations, but not legal conclusions, as true. *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).

## A.

Jarrow's motion asks the court to dismiss many of these counts on the basis that Caudill Seed insufficiently pleaded its claims in its complaint. Under Federal Rule of Civil Procedure 8,

a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This standard does not require "detailed factual allegations," but a pleading is insufficient if it only tenders "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 555-57 (2007).

The pleading standard for claims based on fraud is heightened under Federal Rule of Civil Procedure 9. *Id.* at 569 n.14 (explaining that certain claims are understood to pose "a high risk of abusive litigation," necessitating a heightened pleading standard for those subjects). The party asserting fraud "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Sixth Circuit counsels that this rule requires a plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). Essentially, then, "Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States* ex rel. *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Plaintiff does not make entirely clear in its complaint which claims it bases on fraud[3], and therefore which claims should be held to the Rule 9(b) heightened pleading standard. As to both

---

[3] Fraud is generally defined as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421, 429 (6th Cir. 2009)(defining fraud for the purposes of Federal Rule of Civil Procedure 60). "Moreover, under Kentucky law, fraud consists of six elements: 1) material representation 2) which is false 3) known to be false or made recklessly 4) made with inducement to be acted upon 5) acted in reliance thereon and 6) causing injury." *Torres v. Am. Emp'rs Ins. Co.*, 151 F. App'x 402, 412 (6th Cir. 2005). While both of these definitions do not directly define fraud for the purposes of determining whether Rule 9(b) applies to the particular claims alleged here, they are informative as guideposts in determining the applicability of Rule 9 to this case.

4

federal and state claims[4], where the claim is not directly for fraud, the Court must determine whether fraud is the basis of the claim in order to establish which pleading standard applies.

Here, Caudill Seed's tortious interference claims do not implicate fraud. *See Ky. CVS Pharmacy, LLC v. McKinney*, 2013 WL 1628154, *2 (E.D. Ky. Apr. 15, 2013) (holding that "[f]raud is a possible, but not a required, element of tortious interference"). Similarly, Caudill Seed's extortion claim in Count IV does not arise out of fraudulent statements or omissions. *Accord K.B.A. Constr. LLC v. Home Acres Bldg. Supply*, 2005 WL 2243098, *2 (W.D. Mich. Sept. 14, 2005) (analyzing mail and wire fraud claims under Rule 9(b), while apparently analyzing extortion under a different standard). On the other hand, the Court must clearly apply Rule 9 to any claims for wire fraud and theft by deception in Count II, as these claims at their core suppose Jarrow's fraud. Additionally, Plaintiff contends that Count II alleges common law conversion. Courts have held that common law conversion claims must be plead under Rule 9's heightened standards, and this Court agrees where Caudill Seed uses the federal wire fraud statute and state theft by deception statute as the basis for its conversion claims. *See Union Underwear Co., Inc. v. Wilson*, 2005 WL 3307098, *3 (W.D. Ky. Dec. 1, 2005) (holding that "the Plaintiff fails to meet the requirements of F.R.C.P. 9(b) in their claim of common law fraud and conversion").

The final two counts of Caudill Seed's complaint involve pleading requirements that derive from other claims. First, Caudill Seed's punitive damages claim in Count V is not a distinct cause for action itself; rather, it is derivative of the underlying infirmities cited by Caudill Seed as the basis of its entitlement to punitive damages. *Dalton v. Animus Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012). Caudill Seed claims that Jarrow should be liable for

---

[4] "Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

punitive damages due to Jarrow's fraud, misrepresentation, deceit and concealment of material facts. Accordingly, the punitive damages claims based on fraud must be particularly pled in the complaint. Caudill Seed also makes a specific demand for punitive damages. Because some claims survive this motion to dismiss, punitive damages may still be available based on those remaining claims, which are adjudged under a Rule 8 pleading standard if not based on fraud.

Second, Plaintiff brings a claim for violation of RICO. The Sixth Circuit clearly mandates that a plaintiff must plead a RICO claim with particularly if the predicate acts upon which the RICO claim is based themselves are based on fraud. *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987). Therefore, Plaintiff's RICO claims based on mail and wire fraud, theft, and any other variety of conversion, must be pled with particularity. *See Union Underwear Co.*, 2005 WL 3307098, at *3 (reviewing a RICO claim based on mail and wire fraud under Rule 9(b) pleading standards). However, Plaintiff's RICO claims based on conspiracy and extortion need not. *See Blue Leather, LLC v. Markowicz*, 2008 WL 2958826, *1 (W.D. Ky. July 21, 2008) (reviewing the claim for civil conspiracy under Rule 8(a), and other claims for fraud under Rule 9(b)); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404-07 (analyzing predicate acts of mail theft and wire fraud under Rule 9(b), while apparently analyzing the predicate act of extortion under Rule 8).

B.

Important to this motion to dismiss based on the insufficiency of the complaint is the parallel Jefferson Circuit Court case against Ashurst concerning the same principal subject matter *sub judice*. The Protective Order issued in the Jefferson Circuit Court prevents the disclosure of certain emails, the contents of which provide much of the support for Caudill

Seed's claims here. In a number of instances in Jarrow's motion, Jarrow argues that Caudill Seed failed to plead claims with required specificity, while simultaneously condemning Caudill Seed for providing too much specificity with regards to the documents guarded by the Protective Order. The Court will not require Caudill Seed to violate the Protective Order in order to meet pleading standards where the Court can reasonably infer from the information provided the content of those documents, especially given the Court's obligation to view facts in a light most favorable to the plaintiff. Still, Caudill Seed must satisfy the minimum requirements of Rules 8 and 9 in order to overcome this motion to dismiss.

III.

In Count I, Caudill Seed first claims that Jarrow tortiously interfered with its contractual relations with Ashurst and its business relations with prospective clients. Jarrow argues that Caudill Seed failed to allege in its complaint the necessary elements to support either theory in Count I, thereby rendering the claims insufficient as a matter of law.

Under Kentucky law, to recover for tortious interference with contractual relations, a plaintiff must show "(1) the existence of a contract; (2) [the defendant's] knowledge of the contract; (3) that [the defendant] intended to cause a breach of that contract; (4) that [the defendant's] actions did indeed cause a breach; (5) that damages resulted to [the plaintiff]; and (6) that [the defendant] had no privilege or justification to excuse its conduct." *Snow Pallet, Inc. v. Monticello Banking Co*, 367 S.W.3d 1, 5-6 (Ky. Ct. App. 2012). Jarrow argues that Caudill Seed fails to plead the third element—that Jarrow intentionally interfered with Caudill Seed's contractual relations with Ashurst. The Court disagrees. Caudill Seed entered into non-compete and confidentiality agreements with Ashurst. Viewed in a light most favorable to Caudill Seed, the Court concludes that the fact section in the amended complaint sufficiently asserts Jarrow's

7

intent to interfere with these contracts. *See, e.g.*, ECF No. 6, ¶¶ 3, 13. Count I incorporates the fact section by reference. *Id.* at ¶ 21. Accordingly, Jarrow's argument fails.

To establish a claim for tortious interference with prospective business relations under Kentucky law, a plaintiff must prove: "(1) the existence of a valid business relationship or expectancy; (2) that [the defendant] was aware of this relationship or expectancy; (3) that [the defendant] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc.*, 367 S.W.3d at 6. Jarrow claims that Caudill Seed failed to allege the existence of a valid business expectancy. Jarrow cites *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010) and *Static Control Components, Inc. v. Lexmark International, Inc.*, 2006 WL 980732, *1 (E.D. Ky. Mar. 7, 2006) in support. In *DiFolco*, the Second Circuit found that the plaintiff's allegations that the defendant interfered with its "professional relationships and opportunities for employment" and "business relationships in the news and entertainment industry" were too vague to show a valid prospective business relationship, proving fatal to the claim. 622 F.3d at 115. Similarly, in *Static Control Components*, the plaintiff generally referred to its customers as its business relations, which the Court also found too vague. 2006 WL 980732, *1. Importantly, however, the Court did not dismiss the claim; rather, it limited the tortious interference claim to contracts with specified customers that the plaintiff could identify within thirty days. *Id.* at *2.

The case *sub judice* is somewhat different. Often throughout the complaint, Caudill Seed refers to two potential accounts Caudill Seed hoped to secure, with which Jarrow and Ashurst allegedly interfered. These statements are more concrete than mere general references to customer bases or professional and business relationships. However, Caudill Seed's Count I is certainly not the model of clarity. Caudill Seed did not identify the accounts or provide

information as to the likelihood of securing their business. Nevertheless, this evidence can easily be procured through discovery or if not, the claim will be dismissed at the summary judgment or trial stage of the proceeding. Accordingly, the Court, exercising its discretion, finds that Count I remains as to both theories of recovery.

IV.

Jarrow claims that Count II of Caudill Seed's complaint improperly combines multiple claims into one count in violation of Federal Rule of Civil Procedure 8(a)(2). To support this argument, Jarrow cites *Lampkin-Asam v. Volusia County School Board*, 261 F. App'x 274, 277 (11th Cir. 2008), which found the entire complaint "confusing, incoherent, and clogged with seemingly irrelevant factual allegations." The Eleventh Circuit Court reasoned that after two attempts to correct the insufficient complaint, the plaintiff failed to "adequately link a cause of action to its factual predicates" in that it failed to offer a short and plain statement of the plaintiff's claim. *Id.* (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1272, 1275 (11th Cir. 2006)). While Count II alleges more than one theory of recovery, it is by no means incomprehensible to the point where Jarrow was unable to understand and answer the claims. *Estate of Smith* ex rel. *Richardson v. United States*, 509 F. App'x 436, 439 (6th Cir. 2012) ("For a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and the reasonable inferences from that content, must be 'plausibly suggestive' of a claim entitling a plaintiff to relief." (quoting *Iqbal*, 556 U.S. at 681)). In fact, Jarrow quite aptly explained and refuted each of the claims contained within Count II in its motion and reply. Accordingly, the Court finds that Count II did not violate Rule 8 to such a degree as to warrant its dismissal.

Giving a very liberal construction of Count II, Caudill Seed asserted four distinct claims in the count: theft by wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, theft by deception

in violation of K.R.S. § 514.040, violation of a state statute under KRS § 446.040, and common law conversion. Jarrow argues that each of these claims must fail as a matter of law.[5]

A.

Addressing the federal theft by wire fraud and state theft by deception claims, the Court must determine whether these statutes provide an implied private cause of action, because neither statute does so explicitly. "In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). The federal statutes at issue here are purely penal. It cannot be inferred that Congress intended to create a private right of action thereunder. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) ("Violations of [18 U.S.C. § 1341 and 1343] of the federal criminal code, however, do not give rise to private rights of action."). The Court must dismiss these claims.

B.

According to Jarrow, Kentucky's theft by deception statute is also penal, and a private plaintiff may not hold a defendant liable directly under that statute in Kentucky. *Accord Youngblood v. City of Paducah*, 2012 WL 529871, *6 (W.D. Ky. Feb. 17, 2012). Caudill Seed does not refute this argument. The Court agrees. Accordingly, Caudill Seed's claim against Jarrow under KRS § 514.040 must be dismissed.

However, Caudill Seed argues that it brings its state law theft by deception claim under KRS § 446.070, which "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil remedy." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).

---

[5] Caudill Seed does not seem to defend its claims brought directly under 18 U.S.C. §§ 1341 and 1343 and KRS § 514.040. However, Caudill Seed was not clear about this position in its briefings, so the Court must address the sufficiency of each of these claims.

> KRS 446.070 provides recovery for individuals injured by violations of "any statute" so long as they are members of the class of persons meant for protection by the statute. Kentucky courts have consistently held that the "any statute" language is limited to state statutes only and does not extend to federal statutes of which congress has not expressly intended to create a private right of action.

*Yeager v. Dickerson*, 391 S.W.3d 388, 393 (Ky. Ct. App. 2013). Although Caudill Seed never mentioned KRS § 446.070 in its pleadings, the Court will not dismiss this claim for this reason. KRS § 446.070 is a negligence per se statute that provides a private right of action for some Kentucky criminal statutes, such that the evidence needed to convict a defendant under the criminal statute necessarily overlaps, and in some cases, largely envelops the evidence needed to prove the claim pursuant to KRS § 446.070. Thus, Caudill Seed provided enough information to state its claim under KRS § 446.070 in its pleadings for liability under KRS § 514.040, and Jarrow is not prejudiced by allowing the claim to proceed under KRS § 446.070 to any material degree.

Jarrow further argues that Caudill Seed failed to plead its theft by deception claim with particularity, as is required under Rule 9. However, the Court finds that Caudill Seed's complaint satisfies this rule to the best extent possible, considering that the evidence supporting this claim is largely protected under the Protective Order.

Rule 9 requires the plaintiff to plead the who, what, when, where, and how of the fraud. KRS § 514.040 enumerates a number of ways by which a person can commit theft by deception, a few of which may apply to the present situation based on the facts alleged in the complaint. The alleged perpetrators of the fraud are evident from the pleadings. As to the time of the deception, it is clear from the complaint that the alleged deception took place between March 2011 and June 2011, as evidenced in the email dates. The emails allegedly evidence the deception, although the contents of those emails remain undisclosed according to the Protective

Order. The location of the deception can be reasonably inferred from the information provided in the complaint, especially in light of the fact that much of the alleged deception took place over the internet and at Caudill Seed's place of business. Accordingly, Caudill Seed's claim for theft by deception brought under KRS § 446.070 survives the motion to dismiss.

C.

Finally, Caudill Seed brings a conversion claim in Count II. Kentucky law is unsettled as to the necessary elements of a conversion claim. Without expressly so holding, the Kentucky Supreme Court quoted 90 C.J.S. *Trover and Conversion* § 4 (2004) for the proposition that

> [t]he elements necessary to prove a conversion claim established in case law are (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n.12 (Ky. 2005). However, a recent Kentucky Court of Appeals decision quoting an opinion from this Court issued later in 2005, states, "In Kentucky, 'The elements of a conversion claim are (1) ownership rights in a certain property, (2) the wrongful act of taking or disposing of property, and (3) causing damages." *Atmost Energy Corp. v. Honeycutt*, 2013 WL 285397, *11 (Ky. Ct. App. Jan. 25, 2013) (quoting *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) (citing *Anderson v. Pine S. Capital, LLC,* 177 F. Supp. 2d 591, 603 (W.D. Ky. 2001); *Goss v. Bisset*, 411 S.W.2d 50, 53 (Ky. 1967))). Under the more generalized elements described in the *Atmost Energy Corp.* line of cases, Caudill Seed's complaint is sufficient. Under the *McClendon* recitation of elements, Jarrow contends that Caudill Seed failed to allege that it

demanded return of the stolen items. Jarrow may be correct that Caudill Seed failed to plead this *McClendon* element, but Caudill Seed may not have been required to do so under Kentucky law following the *McClendon* progeny.

Judge David Bunning, District Judge for the Eastern District of Kentucky, dealt with a similar problem in *Kendrick v. Standard Fire Ins. Co.*, 2007 WL 1035018 (E.D. Ky. Mar. 31, 2007). In Judge Bunning's logical and reasoned analysis, he denied the motion to dismiss plaintiff's conversion claim despite the failure to plead that the plaintiff demanded return of the alleged converted property, because there is no indication that *McClendon* "was intended to nor does it address all considerations when pursing a conversion claim." *Id.* at 13. Analyzing *Kendrick*, this Court held that even though the more stringent conversion requirements in *McClendon* may be applicable to many cases, "a plaintiff in a conversion action need not *plead* a demand for return where the plaintiff claims that the taking was wrongful from the outset, rather than an initially lawful taking that later become unlawful." *WCP/Fern Exposition Servs., LLC v. Hall*, 2011 WL 1157699, *10 (W.D. Ky. Mar. 28, 2011) (emphasis added). Neither party briefed this issue. Because Caudill Seed may not have been required to plead this element, the Court refuses to dismiss the claim for its failure to do so.

V.

In Count III, Caudill Seed alleges extortion claims under federal law, in violation of 18 U.S.C. § 1951, and state law, in violation of KRS § 514.080. Caudill Seed concedes that the federal statute prohibiting extortion does not provide a private right of action. *See Hopson v. Shakes*, 2013 WL 1703862, *2 (W.D. Ky. Apr. 19, 2013) ("The Hobbs Act[, 18 U.S.C. § 1951] is a criminal statute, and federal courts have consistently found that the Hobbs Act does not support a private cause of action." (internal citation omitted)). Accordingly, this claim must be

dismissed. Similar to the state law theft by deception claim, no private right of action exists directly under KRS § 514.080, a criminal statute. However, Caudill Seem may bring the claim under KRS § 446.070.

Jarrow argues that even under the Kentucky negligence per se statute, Caudill Seed failed to plead an extortion claim, because under Kentucky law, extortion does not extend to threats of economic harm. KRS § 514.080 defines theft by extortion as

> intentionally obtaining property of another by threatening to:
> (a) Inflict bodily injury on anyone or commit any other criminal offense; or
> (b) Accuse anyone of a criminal offense; or
> (c) Expose any secret tending to subject any person to hatred, contempt, or ridicule, or to impair his credit or business repute; or
> (d) Use wrongfully his position as a public officer or servant or employee by performing some act within or related to his official duties, either expressed or implied, or by refusing or omitting to perform an official duty, either expressed or implied, in a manner affecting some person adversely; or
> (e) Bring about or continue a strike, boycott, or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; or
> (f) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense.

KY. REV. STAT. ANN. § 514.080(1). Caudill Seed contends that Jarrow, acting through Ashurst, threatened "economic injury" by "continuing to withhold from Caudill Seed its proprietary and confidential information if Caudill Seed refused to sign the requested waiver." The facts in Caudill Seed's complaint do not allege a threat that falls within the enumerated threats prohibited under Kentucky extortion law. For this reason, Caudill Seed fails to state a claim upon which relief can be granted, and the Court dismisses the entirety of Count IV.

VI.

Jarrow initially argued that Caudill Seed's Count V, titled "Fraud, Outrageous Conduct – Punitive Damages" should be dismissed pursuant to Rule 12(b), because Caudill Seed failed to plead the fraud claim with particularity as required in Rule 9. However, Caudill Seed contends

14

that Count V only presents a punitive damages claim, the basis of which is fraud and other outrageous conduct. As stated above, punitive damages claims are not separate causes of action, but are means of obtaining damages derivative of particularly offensive unlawful conduct proved through underlying causes of action. Consistent with the rest of this opinion, then, Caudill Seed's claims for punitive damages fail where the underlying claims fail, and the punitive damages claims survive on the basis of those claims that remain.[6]

## VII.

Caudill Seed brings Count VI under RICO, which prohibits certain entities from engaging in proscribed criminal conduct under 18 U.S.C. § 1962(c). "To state a RICO claim, a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). Jarrow makes convincing arguments that Caudill Seed failed to allege the occurrence of valid racketeering activities and the existence of a legally cognizable pattern of that activity. However, the Court finds that Caudill Seed's claim must be dismissed for failure to plead an enterprise, as defined under RICO law.

Under RICO, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an enterprise, a plaintiff must prove

> (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the

---

[6] To the extent that Caudill Seed sought to present a fraud claim in this count, Caudill Seed indeed failed to plead any of the required particulars. Accordingly, that claim, if intended, is dismissed.

> enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Ouwinga*, 694 F.3d at 793. "If RICO imposed liability on a corporation for the ordinary conduct of its agents and employees, every claim of corporate fraud would automatically become a violation of RICO." *In re ClassicStar Mare Lease Litig.*, 2013 WL 3746220, *14 (6th Cir. July 18, 2013).

Relevant to this case, "[u]nder the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). This is because "a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Davis v. Mut. Life Ins. Co. of N.Y.*, 6 F.3d 367, 377 (6th Cir. 1993). This Court has previously explained that "[a]n employee and her employer corporation cannot together comprise a RICO enterprise." *Vest v. Perkins*, 2005 WL 1026207, *1 (W.D. Ky. Apr. 26, 2005). As the *Vest* opinion makes clear, during all times when Jarrow employed Ashurst,[7] the two did not constitute an enterprise.[8] The same principle applies to the period when Caudill Seed still employed Ashurst, because Caudill Seed concedes that Ashurst was Jarrow's agent.

Caudill Seed often characterizes Ashurst as Jarrow's agent in its complaint: in the fact section, ECF No. 6, ¶¶ 17, 20; with respect to the theft and wire fraud claims, two of the three predicate acts upon which Caudill Seed based its RICO claims, *id.* at ¶ 26; and in the RICO count itself, *id.* at ¶ 41. To hold Jarrow liable, Caudill Seed contends that Ashurst acted on

---

[7] Jarrow contends that Ashurst serves as its consultant, and Jarrow only employs Ashurst as an independent contractor. Where Ashurst acts on behalf of Jarrow within the scope of his employment with Jarrow, the Court finds no substantive reason why the principle that an employee and his employer corporation cannot together comprise a RICO enterprise should not apply.

[8] Thus, the alleged predicate act of extortion, which took place on May 4, 2011, two days after Jarrow placed Ashurst on its payroll, cannot lie.

16

behalf of Jarrow to obtain confidential and proprietary information, not simply in concert with Jarrow. *See Brown v. Cassens Transp. Co.*, 675 F.3d 946, 968 (6th Cir. 2012) (holding that, due to the plaintiff's characterizations in his complaint, "Crawford and Cassens can comprise an enterprise on their own because Crawford 'act[ed] as an agent for, *or in concert with*, Cassens"). As Jarrow's agent, acting upon Jarrow's instructions and within the scope of his agency relationship with Jarrow, Ashurst was not sufficiently distinct from Jarrow so as to establish an enterprise for RICO purposes. Accordingly, Caudill Seed's RICO claims must fail.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant Jarrow Formula Inc.'s Motion to Dismiss is DENIED as to Count I, Count II claims for conversion and theft by deception pursuant to KRS § 514.040 and KRS § 446.070, and Count V.

IT IS FURTHER ORDERED that Defendant Jarrow Formula Inc.'s Motion to Dismiss is SUSTAINED as to Count II for wire fraud under 18 U.S.C. § 1341 and § 1343 and theft by deception directly under KRS § 514.040, Count IV, and Count VI.

cc: Counsel of Record