UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


CAUDILL SEED & WAREHOUSE
COMPANY, INC. d/b/a CAUDILL SEED COMPANY                    PLAINTIFF


v.                                             CIVIL ACTION NO. 3:13CV-82-CRS


JARROW FORMULAS, INC.                                          DEFENDANT



**<u>MEMORANDUM OPINION</u>**



This matter is before the court for consideration of a number of motions:

**DN 190** – Caudill Seed's Omnibus Discovery Motion to Compel, Strike and for Leave to Disclose a Rebuttal Expert

**DN 219** – Caudill Seed's Motion for Pretrial Conference to Set Trial Date

**DN 224** – Jarrow Formulas' Motion for Leave to Supplement Expert Report of Dr. West

**DN 227** – Jarrow Formulas' Motion for Leave to File Motion for Partial Summary Judgment

**DN 228** – Caudill Seed's Motion to Strike Expert West

**DN 229** – Jarrow Formulas' Motion for Leave to File Surreply to Motion for Pretrial Conference to Set Trial Date

**DN 247** – Jarrow Formulas' Motion for Oral Argument of Summary Judgment Motions

# I.    Introduction

There is one claim remaining in this action – a claim under the Kentucky Uniform Trade Secrets Act, KRS 365.880-900 ("KUTSA").  (DN 89, p. 19 ("…Caudill's only remaining claim proceeds under KUTSA for misappropriation of trade secrets based upon Jarrow [Formulas Inc.]'s alleged independent wrongful conduct.")).

It is clearly established in Kentucky that in order to demonstrate a violation of KUTSA, a plaintiff must show that:  (1) it has a trade secret; and (2) the defendant misappropriated the trade secret.  *Alph Kaufman, Inc. v. Cornerstone Industries Corporation*, No. 2014-CA-001790-MR, 2017 WL 943972, *11 (Ky.App. March 10, 2017), *citing Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F.Supp.2d 784, 788 (W.D.Ky. 2001); *Community Ties of America, Inc. v. NDT Care Services, LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, *slip op*. at 10 (W.D.Ky. Feb. 9, 2015).

> A trade secret is information that derives independent economic value "from not being generally known to and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, " and is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." KRS 365.880(4)…Breaking this down further, to be considered a trade secret under the KUTSA, the information at issue must (1) have independent economic value; (2) not be generally known or readily ascertainable by proper means; and (3) be the subject of reasonable efforts to maintain its secrecy.  *Id.*; *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 274 F.Supp.2d 880, 890 (E.D.Ky. 2003).  "Whether a particular type of information constitutes a trade secret is a question of fact." *Fastenal Co. v. Crawford*, 609 F.Supp.2d 672 (E.D.Ky. 2009).

*Id.*  KRS 365.880(2)(b)(2)(c) provides:

> "Misappropriation" means use of a trade secret of another without express or implied consent by a person who…at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was…derived from or through a person who owed a duty to the person seeking relief to maintain its

secrecy or limit its use…

The definition of "misappropriation" also includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." KRS 365.880(2)(a). KRS 365.884(1) provides for damages for misappropriation of trade secrets which "may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."

The sum total of this case is a claim for misappropriation of Caudill Seed and Warehouse Company, Inc.'s ("Caudill Seed" or "Caudill") trade secrets by Jarrow Formulas, Inc. ("Jarrow Formulas" or "Jarrow"). Much of the discussion in the motions presently before the court ventures far afield of the claim in this case. The court will try to bring the parties' focus back to the issue before us for trial.

## II.     Caudill Seed's Omnibus Discovery Motion to Compel, Strike, and for Leave to Disclose a Rebuttal Expert (DN 190)

We will address the issues raised in the motion seriatim, and include issues raised in related motions where appropriate.

### A.  Report of Dr. Leslie West (DN 100-11), Supplements to Report (DNs 190, 228), Motions to Strike (DNs 190; 228), and Motion for Leave to File Motion for Partial Summary Judgment (DN 238)

The above-cited matters are interrelated.

In October, 2014 the time for disclosure of expert witnesses and reports expired. Caudill Seed did not designate an expert witness with respect to any issues of liability. Jarrow Formulas produced the report of Dr. Leslie West purportedly as a "rebuttal expert." The disclosure was

found to be timely, but the designation raised some questions which were addressed by the court. Judge John G. Heyburn, II was then presiding in the case. He held a telephonic motion conference on the record on October 24, 2014 to address, among other matters, the motion of Caudill Seed to exclude the expert reports of West and of Kean Ashurst, the former employee of Caudill who admittedly took materials from it upon leaving his employment. The transcript of that conference was made part of the record (DN 113).

Counsel for Jarrow indicated that West was an independent third-party expert witness offered "to rebut [Caudill Seed's] case-in-chief." (DN 113, p. 6).[1] The court noted, however:

> I guess my first reaction to this whole thing was that I'm not sure that an expert on what's a trade secret is even appropriate. People like, let's say, Ashurst can testify about, let's say, particular items of information or technology or whatever it is that could be a trade secret and can testify from their own personal knowledge of what it is and how important it is and that sort of thing. But the term "trade secret" is a legal definition. I'm not sure that we need an expert to give an opinion about what it is…From what little I know, Ashurst fits that model perfectly. He's a person who apparently has actual knowledge of the supposed trade secrets. He could testify about his actual knowledge but couldn't give an opinion about whether it is actually a trade secret. That's going to be something, if the case was tried, that would be part of the jury instructions, and you take his testimony and make the argument. I suppose it could be decided as a legal matter if the facts are absolutely clear. There could be a directed verdict on whether a particular thing is a trade secret or not, I suppose. I don't know enough about the case to know whether that is likely or possible. My initial skepticism is that, again, the litigation over what's a trade secret should be about people who have knowledge of what's going on here testifying about that and then the lawyers making the argument and that sort of thing rather than certainly not experts giving an opinion that this is a trade secret. There could be other opinions they might have, I don't know what they would be, not on that issue.

(DN 113, pp. 7-8). Counsel then indicated that he misspoke, and explained:

> Your Honor, that it's routine in cases of this nature where you are dealing with technical subject matter to have a technical expert give opinion testimony as to what the trade secret is that's been identified and whether or not that information

---

[1] Kean Ashurst, it was indicated, was "almost substantially entirely a fact witness," (DN 113, p. 7), but was designated as an expert out of an abundance of caution. Kean Ashurst's report is not in issue here.

was confidential or not or whether it was disclosed in the public domain.

The following exchange further suggested the proposed scope of West's testimony. Jarrow Formulas' counsel stated:

> …[O]ne of the key trade secrets at issue in this case is the production of what they call an activated formula. It's basically a broccoli supplement where they take broccoli powder and they combine it with a particular enzyme they called myrosinase and something else called calcium ascorbate. The idea is when you inject that into your gut, the myrosinase gets converted into sulforophane, which is a chemical that is believed to have an anticancer effect and otherwise be healthy for you. So that's one of the key trade secrets at issue in this case, whether or not this is actually – this formual is confidential.

The court then asked:

"So West and Ashurst are going to say this has been around for a long time and other people knew how to do this?" Counsel for Jarrow responded:

> Yes, West for example, is going to say "Hey, back in the early 2000s, I, in fact, developed this," which he did. So he's partly fact and partly expert. He worked for Kraft Foods. He filed a patent application. It was published. It disclosed the same activated formula. That's what he's going to say.

(DN 113, p. 13). The court noted that "That's not really expert testimony. That's just his testimony," (*Id.*), to which Jarrow's counsel responded:

> That's right, Your Honor. In that regard, it would be fact testimony. I have personally been in situations where attorneys have argued that if someone testifies about something technical and they sound like an expert, they are an expert. There are other parts of his testimony where – that's why we named him as an expert as well – there are other parts of his testimony where he does not have firsthand knowledge, where he might go look at – for example, the next trade secret is the process of de-oiling broccoli seed using supercritical food extraction. Basically, when you make these broccoli supplements, the broccoli has a lot of oil in it, and you need to get the oil out of it, and so they use a process called supercritical food extraction to take the oil out of the broccoli. What Mr. West will testify to, Your Honor, is that this process of supercritical food extraction was in the public domain, it was known, and he's going to point to where it was in the public domain, where it was known, and thereby establish that it was not

confidential.

*Id.* The exchange continued discussing another process, the process of spray drying myrosinase.

The court asked Caudill Seed's counsel whether there were employees of Caudill who could rebut West's assertions that the various principles and processes were in the public domain and not confidential, to which he replied "Yes." *Id.* The exchange between the court and counsel for Caudill included the following:

> *The Court*:    I guess it's sort of true that in order to prove Caudill's case, they need to show that these compounds or enzymes are confidential in some way or another, not in the public domain. Of course, I assume that your people would testify about that, right?

> *Caudill's Counsel*:    That's correct, Your Honor.

> *The Court*:    Your own people could or might have in the process of their own work or in the process of this litigation searched to see whether there are any references to these compounds prior to the time – that's not really expert –

> *Caudill's Counsel:*    That's correct, Your Honor, which is why we interposed our objection. Not to interrupt, but if I may briefly. Having sat through the Ashurst deposition, I guess it was Tuesday of this week, and the first two hours this morning of the West deposition, they are testifying in broad terms. The trade secrets that we have and that we are prepared to disclose through the course of the case and have been disclosed are much narrower. What you have Mr. West and Mr. Ashurst opining upon are broad parameters in terms of temperature, in terms of timing, the amount that you – eight minutes to 24 minutes, and then 24-hour overnight. You are also discussing the quantities that are in there. That is what is a trade secret, which has not been disclosed in the patents that have been filed in this case, be it in the West patent, which was for Kraft, be it in the Ashurst patent, which was for Caudill Seed, or then the subsequent Ashurst patent, which was for Jarrow Formulas.

(DN 113, pp. 17-18).

The court discussed the fact that West (and Ashurst) were "not exactly rebuttal experts in the sense that they are not rebutting other expert testimony." (DN 113, p. 21). It found, however,

that the "odd language" of the Agreed Litigation Plan (DN 28) justified a finding that the designation of West and Ashurst under the later expert disclosure deadline (*ie.* rebuttal deadline)[2] was appropriate and the disclosures timely. The court then noted, "I still have a question of the extent of what they can testify about." (DN 113, p. 22).

Caudill Seed then sought leave to designate a rebuttal expert to rebut the testimony of West. Jarrow Formulas fought hard against the request noting that at least 25 depositions had already been taken, and stating that "if [Caudill Seed is] allowed to introduce the expert at the close of discovery, it would really turn this case upside down on its head." (DN 113, pp. 10, 17). The court stated that "I think the rebuttal – your rebuttal expert is probably not in the cards at this point. It's sort of too late for that." (DN 113, p. 20). The court reasoned:

> It seems to me what has happened so far is fair enough and that if Caudill Seed had thought they needed an expert, they could have filed one. But the whole situation is about, I think, the extent of West's actual testimony, and we haven't gotten into that yet, whether he can actually give certain opinions. That could be – is going to be the subject for another day.

(DN 113, p. 23).

The court ruled that the motion to exclude West and Ashurst was denied, and additional filing of experts was denied, and "We will leave the exact scope of these last experts for later discussion." (DN 113, pp. 24-25).

It is against this backdrop that we now address the scope of West's initial report as well as the two supplemental reports offered by Jarrow.

The court has reviewed and considered all three reports in light of the stated purpose for West's testimony within the context of this case and concludes, first, overall, the reports far exceed

---

[2] Designated as "from Defendant(s) by: April 15, 2014 (For each party's defense to affirmative claims." (DN 28, p. 2). The term "rebuttal" is not used.

the stated purpose or, indeed, permissible bounds of expert testimony in this case.

A cursory review of the original report (DN 100-11) reveals legal conclusions which are wholly improper. He states at p. 8, for example, that

> I have relied on Jarrow's counsel for the applicable legal standards in evaluating whether the information or materials that Caudill Seed alleges Jarrow to have misappropriated are trade secrets. I reserve the right to supplement, amend, and/or clarify my opinions and conclusions in the event of a change in the applicable law or a change in my understanding of the applicable law.

He then proceeds in paragraphs 6 through 9 to conclude each evaluative paragraph with a conclusion that the matter was "generally known and readily ascertainable by proper means based upon information in the public domain, and therefore could not constitute a trade secret as of and prior to May 1, 2011." These legal conclusions venture far from the representation of Jarrow that West was going to "point to where [a given method, process or information] was within the public domain." (DN 113, p. 13).

An "expert's opinion must stop short of embracing the legal terminology 'which frames the ultimate legal conclusion which the jury must reach in the case.' *Alvarado v. Oakland County*, 809 F.Supp.2d 680, 688 (E.D.Mich. 2011)(citing *Torres v. County of Oakland, et. al.,* 758 F.2d 147, 151 (6th Cir. 1985))." *Louisville Marketing, Inc. v. Jewelry Candles, LLC*, No. 3:15CV-00084-DJH, 2016 WL 6595094 (W.D.Ky. Nov. 4, 2016). Indeed, legal opinions propounded by experts invade the province of the court. *United States v. Gallion.* 257 F.R.D. 141, 153 (E.D.Ky. 2009).

West also delves into Caudill Seed's filing of a provisional and later a utility patent application, the patent process, and the outcome as of August 2014.[3] This recitation is not proper expert testimony in this case, as it offers nothing to the jury that would be helpful to understanding

---

[3] West's Second Supplemental Report documents the rejection of Caudill Seed's appeal by the Patent Trial and Appeal Board in February of 2017.

the subject matter (which is not patents). The testimony would be misleading and unduly confusing to the jury, and thus subject to exclusion pursuant to Fed.R.Evid. 43 as any probative value would be clearly outweighed by its prejudicial effect.

Patent and trade secret law are distinct. "[I]n order to be considered a trade secret, a pattern, technique, or process need not reach the level of invention necessary to warrant patent protection." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006). "And regardless of whether a patent application is accepted or rejected, a plaintiff may certainly have a valuable trade secret claim where the 'implementation, details and techniques' or other elements of the trade secret go beyond what was disclosed in the patent." *Skin Medica, Inc. v. Histogen, Inc.*, 869 F.Supp.2d 1176, 1995 (S.D.Cal. 2012).


(1)

The Second Supplemental Expert Report of Leslie West (DN 224-1) deals entirely with the February 2, 2017 Patent Trial and Appeals Board ("PTAB") decision and West's interpretations and conclusions gleaned from the decision. For the reasons stated above, Jarrow Formulas' motion for leave to file the second supplemental report (DN 224) will be denied. Jarrow's motion for leave to file a motion for partial summary judgement (DN 227), which is based in principal part on the claimed preclusive effect of the PTAB decision on the trade secret claim, will also be denied.


(2)

Part two of Caudill Seed's response to Jarrow Formulas' motion for leave to file West's second supplemental report (DN 224) seeks to strike West as an expert altogether on the ground that the reports, in all their various forms, fail to deliver the expert opinions that Judge Heyburn

opined would be acceptable and helpful to the jury in this technical case. The request to strike (docketed as an affirmative motion (DN 228) falls short of a *Daubert* challenge, but rather discusses the out-of-bounds opinions and lack of expert value to the case.

The court has found that the initial report of West reaches beyond permissible bounds and will need a significant redaction if Jarrow Formulas intends to offer any testimony of West at trial. The court cannot predict at this time what the report will look like after proper redaction in accordance with this opinion. The court is unwilling to speculate, and therefore will deny Caudill Seed's motion to strike Leslie West as an expert (DN 228), however, as the value of the a redacted version of the report within the contours of the case to be tried has yet to be determined.

(3)

With respect to the motion to strike the supplemental report of West (DN 204-1), the court will deny the motion to strike, but will require that it be significantly redacted.

Caudill Seed is correct that the supplemental report ventures into a number of wholly new areas neither contemplated nor investigated during discovery. To permit these new theories to be offered by West at this late date would be highly prejudicial to Caudill Seed and would impede the forward progress of this case. Additionally, the supplemental report suffers from many of the same flaws as the original report, including the offering of legal terminology and conclusions and patent analysis.[4]

Generally, West's offer of supplemental opinion as to the first three categories of trade

---

[4] We note, however, with respect to the supplemental report, to the extent it addresses the categories of trade secrets as by Caudill Seed in response to summary judgment, if Caudill opens the door by referring to the provisional and/or utility patent applications, an admonition to the jury concerning the limited purpose for which the patent application is being offered, or Jarrow Formulas may be permitted to prove that the applications were rejected by the Patent and Trademark Office ("PTO") and PTAB. The "trade secret no. 2," the general manufacturing process, may be shown by Jarrow Formulas to have been in the public domain, but it may not do so by offering the PTO's bases for the rejection of the claims of the patent application.

secrets alleged in the six disclosed – (1) research and development on supplements, broccoli, and chemical compounds; (2) the general manufacturing process detailed in Caudill's provisional application, and (3) the precise process for spray-drying myrosinase, are not objectionable. The supplemental report was disclosed within the time for such disclosures, albeit at the eleventh hour. But Caudill Seed did not disclose its six categories of trade secrets as such, until responding to the summary judgment motion.

West has already addressed the process for spray-drying myrosinase so this should come as no surprise to Caudill. There is no prejudice as to the opinions on the general manufacturing process detailed in the provisional application these opinions will be limited in the same way we indicated the original application must be limited to prevent confusion and a mini-trial on patents.

With respect to the opinions concerning Caudill Seed's R & D, paragraphs 14 through 21, with the exception of their legal wrap-up language, appear facially to offer an acceptable opinion concerning whether the matter in question could be found in the public domain.

With respect to the sixth category of trade secrets offered by Caudill Seed – a hard drive and research notebook – West's opinion (Section X) is improper and must be stricken. He offers nothing useful factually, nor does he offer any opinion within his area of expertise. Further, his expertise is not required as to the contents, or lack thereof, described to be contained within the allegedly purloined notebook and hard drive.

With respect to the section on a purportedly unrestricted disclosure of ingredients by Caudill to NuMedica in 2010, and Ashurst's revelation to Jarrow Formulas that he reverse-engineered a product called ActivaMune while at Caudill Seed in 2009, it does not appear that these matters are properly offered by West. These are matters of fact which he simply recites in his report. There is nothing technical about a disclosure of information that West could offer a jury.

Additionally, the repetition of Ashurst's story of reverse-engineering the ActivaMune product is not a proper expert offering. Whether Ashurst himself would be permitted to testify concerning the matter would depend, inter alia, upon both relevance and whether the documents were timely produced and subject to an opportunity for Caudill Seed to depose him on this issue, as apparently this was not revealed in discovery by Jarrow until 2016. The admissibility of this bit of evidence is not directly before the court at this time. The matter we are presently addressing is the inclusion of this narrative in West's report which we have concluded is subject to redaction as improper subject matter for this expert.

Caudill Seed objects to the supplemental opinions concerning its third category of alleged trade secrets – the precise process for spray-drying myrosinase. West opines concerning an email exchange between Ashurst and Slaughter in 2011. Caudill objects to this section of the supplemental report (Section IX) on the ground that it is a "new" opinion which West could have disclosed in the original report but did not. Yet Caudill Seed set out its six categories of trade secrets for the first time in response to summary judgment. Its belated refinement of its theory justifies West's refinement in this regard. The court would permit Caudill Seed to redepose West in order to develop this limited area and the final section of the supplemental report addressing the differences between the Jarrow Formulas process and the Caudill Seed processes delineated as trade secret categories 2 and 3. (Section XII). With respect to Section XII, the court finds, preliminarily, that an expert opinion concerning the differences between the Jarrow and Caudill processes might assist a jury in determining whether Jarrow used any trade secrets it may have misappropriated from Caudill. Such a determination would be necessary to show liability and damages.

Again, we reiterate that this opinion does not decide the admissibility of any of West's

opinions at trial. Rather, it seeks to establish the outer boundaries of his original and supplemental reports and what, at a minimum, must be done in order for admissibility to be considered at all.

(4)

In light of the court's findings with respect to the West reports which severely limits the scope of the original and supplemental reports, and precludes the second supplemental report, the court will deny Caudill Seed's request for leave to designate a rebuttal expert. Nothing has changed from the time of Judge Heyburn's ruling to persuade the court to permit a rebuttal expert at this late date. Jarrow will be constrained by its original representations to the court concerning the scope and purpose of West's testimony and the court's 2014 ruling upon those representations.

(5)

Next Caudill Seed seeks to strike the disclosure of Roy Lung as a witness. A Rule 26 disclosure was made identifying him after the August 2016 deadline. He is identified as a witness who conducted testing only recently of various broccoli products for their gluchoraphanin content. This testing and newly-minted opinion are expert in nature and thus their disclosure is well beyond the deadline for such disclosures. Jarrow argues that this evidence and testimony was recently produced because Caudill Seed was being difficult about providing unredacted copies of documents on Caudill Seed's testing of its Vitalica Plus product, insisting that Jarrow's counsel review the unredacted douments in Caudill's Louisville counsel's office. Jarrow's annoyance and protestations concerning Caudill's distrust, despite their "Attorney's Eyes Only" agreement is not sufficient grounds to get new expert testimony in. Lung has not technically been offered as an expert, however, and there is no motion for leave to add him. He was merely identified pursuant to Rule 26 as a witness with knowledge. While he will not be permitted to testify to the matters

disclosed, there is nothing to strike at this time.

(6)

Caudill Seed claims that Jarrow has failed to produce certain supplemental documentation and has failed to fully comply in supplementing its answers to interrogatories.

Jarrow has not supplemented its disclosures related to its profits and income from broccoli-related supplements. Caudill seeks an updated version of the spreadsheet provided in 2014 by Rory Lipinsky, a Jarrow Formulas employee designated as a 30(b)(6) witness for this purpose. The spreadsheet summarized Jarrow's sales, profits and other data related to the supplements in issue in this case. Lipinsky has stated that extracting the data to create the initial spreadsheet took only a few minutes.

Jarrow Formulas admits that it has refused to supplement its earlier disclosure. It contends that the information disclosed by Lipinsky was only relevant to a now-dismissed Lanham Act claim. Caudill Seed counters that it is relevant to a claim for unjust enrichment damages.

Unjust enrichment damages are recoverable if damage caused by misappropriation of trade secrets is not otherwise taken into account in computing actual loss. KRS 365.884(1). Jarrow Formulas asserts that Caudill Seed did not plead or preserve a claim for unjust enrichment. However, Caudill Seed did assert a claim for unjust enrichment, Count III of the Amended Complaint, which was found to be preempted by KUTSA. Caudill Seed's damages expert has not opined as to unjust enrichment damages, if any, in the case. The matter of the supplementation of his expert report is not before the court. This is a matter of discovery of related to a type of damage which is potentially recoverable under KUTSA. We will order Jarrow's 30(b)(6) designee, Lipinsky, to update the spreadsheet now and again within thirty days of trial. Jarrow will not be

required to produce any underlying documentation in support of the Lipinsky summary (Caudill has agreed to forego such production). Jarrow will not be required to provide any additional documents concerning its present business strategies, goals or projections, as its current plan has no bearing on the alleged misappropriation of Caudill Seed's trade secrets or any damages claimed to be caused therby.

(7)

Caudill seeks supplemental depositions to address what it terms "key factual developments" since the close of discovery.

Caudill seeks 30(b)(6) testimony on its suspicion that Jarrow waited to release an "upformulated" product in 2015, after summary judgment briefing was concluded, in order to avoid discovery in the lawsuit. It does not point to any evidence of a reformulation of Jarrow's BroccoMax. Indeed, Jarrow responds that it has provided the data to Caudill Seed evidencing that the product has contained the same ingredients and has been manufactured under the same process since 2012. There is no ground to reopen 30(b)(6) discovery based upon supposition as to Jarrow's intention in marketing its products.

Caudill Seed wishes to question Ashurst about his handwritten notes concerning a number of meetings which took place immediately after his resignation. Jarrow responds at length to this request, establishing that this line of questioning was covered in Ashurst's deposition, albeit without his notes in hand. However, the testimony of Ashurst is consistent with his notes. (DN 202, pp. 29-30). Caudill Seed has therefore not shown good cause for reopening depositions on these matters. *State Farm Mutual Auto Ins. Co. v. New Horizont, Inc.*, 253 F.R.D. 227, 235-36 (E.D.Pa. 2008).

(8)

Caudill Seed seeks an "Attorney's Eyes Only" review of Jarrow Formulas' redacted documents provided in supplemental discovery. It states that "both parties have redacted documents in supplemental discovery based upon concerns about sharing sensitive commercial information" deemed by the party to be irrelevant. (DN 190-41, p. 27). It then states that it does not trust Jarrow and wants to verify the redactions. The request is based solely on speculation and doubt, and it recites no authority to compel this procedure on that basis.

(9)

Caudill Seed also seeks an order of the court requiring Jarrow to provide a stipulation that Jarrow is unable to produce two years of emails of Ashurst between January 2012 and May 2014. Apparently, Ashurst appears in email communications during that time which were discovered by Caudill in document production from others. Jarrow has not produced emails for this period. Ashurst is not a party to this action and is not an employee of Jarrow Formulas. Although Caudill Seed raised questions about the "missing emails" in July and August 2014, it did not ask Ashurst about his document production (or lack thereof) during his September 2014 deposition. There has been no good cause shown to reopen discovery or require Jarrow to make any stipulation about the document production of a non-party to the case. Further, Caudill has cited no authority which would permit the court to order such a stipulation.

(10)

Caudill Seed seeks confirmation in writing that "Jarrow did not find or produce a copy of

the CD sent by Ashurst to Jarrow in April 2011 containing his "full research file." (DN 190-41, p. 31). According to Caudill, there were two CDs that were sent by Ashurst to Jarrow – one containing rather benign marketing materials, and one containing a "full research file" sent to Jarrow Formulas prior to Ashurst's resignation from employment at Caudill Seed. This second CD appears to go to the very heart of this case.

Dr. Clouatre, a technical writer and scientific advisor to Jarrow Formulas, testified that he had this second CD, placed it on a desk at Jarrow, and has no knowledge of what happened to it thereafter. (DN 190-41, p. 32). Caudill Seed seeks confirmation in writing that this second CD was never located by Jarrow Formulas during discovery. In light of Clouatre's testimony that he left this CD on a desk at Jarrow Formulas' premises, the court will order Jarrow Formulas to certify that it did not find the CD in discovery.

(11)

Finally, Caudill Seed asserts that Jarrow Formulas has not fully and substantively answered and supplemented its responses to interrogatories. A review of the answers to interrogatories 3, 4, 7, 8 and their subparts; interrogatories 5, 6, 9; and 3 (of Set 2) establish that the answers are complete.

In response to 3, 4, 7, and 8, an indexed CD was produced to Caudill, and supplemental documents were identified by Bates number. (DN 202, Exs. FF, KK). Jarrow states that it referred to the documents themselves in answer to the request for dates, means of transmission, and receiving parties, as the answers are apparent from the face of the documents. This is a permissible means of answering the question under Fed.R.Civ.P. 33(d), provided the information is actually there and so accessible to Caudill. We do not have the documents. However, there is no contention

that the information is absent.

Jarrow similarly referred back to the documents in answering interrogatory 5 which requested it to identify recipients of the documents. (Ex. EE at 6). If there were other recipients not disclosed on the face of the documents, the response would be untrue or incomplete. There is no such allegation.

Interrogatory 6 asked Jarrow Formulas to identify all uses to which it had put the information in Interrogatory 3 and 4. Jarrow responded that it had not used any of the information from the documents. (DN 202, EX. EE at 7-8). This answer appears to be complete.

Interrogatory 9 requested a description of how Ashurst and Jarrow Formulas began communicating with each other while Ashurst was still working at Caudill Seed. In its original answer, Jarrow Formulas provided a narrative description (DN 202, Ex. EE, at 12-13). In supplementing its response, Jarrow referred to the depositions of five executives who provided such testimony. (DN 202, Ex. 13). While this answer refers to the depositions rather than the specific testimony, it is supplemental to the original answer which was made in narrative form. Jarrow's answer is not incomplete.

In answer to Interrogatory 3 of Caudill Seed's Second Set of Interrogatories, Jarrow Formulas answered and provided documents concerning its vendors of broccoli-related products. (DN 202, Ex. GG (sealed) at 2). It supplemented this disclosure providing similar information concerning an additional vendor. (DN 202, Ex. GG (sealed) at 2-4).

Based upon the foregoing review, the court finds that Jarrow Formulas' answers and supplements are substantive and complete. Therefore, Caudill Seed's motion to compel further answers to interrogatories will be denied.

### III.     Jarrow Formulas' Motion for Leave
### To File Motion for Partial Summary Judgment
### Of No Lost Profit Damages (DN 238)

Jarrow Formulas has recently become aware of a "Warning Letter" issued to Caudill Seed

by the United States Food and Drug Administration ("FDA") concerning certain statements made

on its websites about it broccoli product, Vitalica.  The letter stated:

> This is to advise you that the Food and Drug Administration (FDA) has reviewed
> your websites…in March 2017 and has determined that you take orders there for
> the product Vitalica…The claims on your website establish that your product is a
> drug under section 201(g)(1)(B) of the Food, Drug, and Cosmetic Act (the act)
> [21 U.S.C. § 321(g)(1)(B)] because it is intended for use in the cure, mitigation,
> treatment, or prevention of disease…

(DN 238-2, p. 1).  The letter explained that the website claims rendered Vitalica a "new drug" and a

"misbranded drug" under the act.

The Warning Letter required Caudill Seed to take prompt action to correct the violations

and to notify the FDA within fifteen working days of the specific steps taken to correct violations

and to assure that similar violations would not occur in the future. (DN 238-2, p. 3).  The letter

warned that failure to comply "may result in enforcement action without further notice, such as

seizure or injunction."  *Id.*  It is undisputed that Caudill Seed complied with the FDA's directives

and took down its websites in response to the letter.

Jarrow now seeks leave to file an additional motion for partial summary judgment premised

upon its recent receipt of the information concerning the issuance of the Warning Letter.   It

postulates that since the FDA has found that Caudill's websites made illegal drug claims with

respect to the Vitalica product, any claimed "lost sales" of such products purportedly due to

Jarrow's misappropriation of trade secrets would have been illegal sales the value of which Caudill

cannot now recover in this case.

Jarrow Formulas' assertion of illegality is premised upon its contention that the Warning letter proves illegality such that the court can and should accept the letter as conclusive on the point. The court finds this contention flawed and thus rejects Jarrow's argument in its entirety.

The cases of *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992) and *Estee Lauder, Inc. v. U.S. Food and Drug Admin.*, 727 F.Supp. 1 (D.D.C. 1989) convince this court that the Warning Letter does not offer the conclusive proof Jarrow Formulas suggests.

In *Dietary Supplemental Coalition*, the court stated that "regulatory letters do not constitute final agency action." 978 F.2d at 563, *citing Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir. 1983)("'[T]he type of informal letter issued by the FDA…does not constitute the kind of formal or final agency action the Supreme Court had in mind…'"). In *Estee Lauder*, the court considered the precise language in an FDA Warning Letter similar to the one received by Caudill Seed in addressing the nature of the agency's findings. The court initially noted that "just because an agency has authority to enforce regulations does not mean that any action it takes is final." 727 F.Supp. at 4. The court then noted:

> The letter requests Lauder to revise its labels…The letter also says the FDA is "prepared" to take regulatory action. This language is equivocal – there is no definite plan of attack on the part of the Administration. The court concludes that [the FDA's] letter was by its very nature informal and advisory.

727 F.Supp. at 5. The letter to Caudill says that Caudill Seed "should take prompt action to correct the violations" and that failure to do so "*may* result in enforcement action…" (DN 238-2, p. 3)(emphasis added).

We conclude based on the foregoing that the Warning Letter received by Caudill Seed was informal and advisory and not a final statement of an agency as to legality. It is thus not entitled to

deference and does not have the preclusive force urged by Jarrow Formulas.

Further, this letter is forward-looking from the date of its issuance. It does not suggest that any products sold would be recalled or that any products need be taken off the market. Nor does this letter suggest that Caudill Seed would be subject to disgorgement of profits or imposition of any penalty. The letter does specifically mention seizure and/or injunction should Caudill fail to rectify the website violations. But, again, the letter says that failure to correct *May* result in enforcement action, and it is undisputed that Caudill Seed did take corrective action.

The motion for partial summary judgment would be denied, as its basic premise is legally unsound. Therefore, the motion for leave to file the motion for partial summary judgment (DN 238) will be denied on the ground of futility and for lack of any showing of good cause to grant leave to file the motion well beyond the dispositive motion deadline in this case.

### IV.      Jarrow Formulas' Motion for Oral Argument of Summary Judgment Motions (DN 247)

Jarrow Formulas' motion for oral argument of its two motions for leave to file belated summary judgment motions will be denied as moot. The issues raised in Jarrow's briefs were clear and no additional elucidation was required for the court to decide the motions.

### V.      Motion of Caudill Seed for Pretrial Conference to Set Trial Date (DN 219) and Motion of Jarrow Formulas for Permission to File a Surreply to the Motion for Pretrial Conference to Set Trial Date (DN 229)

The motion for a pretrial conference will be granted and a pretrial conference will be set by further order of the court. As for the motion for leave to file a surreply, enough is enough. Further

statements are unnecessary on that account.  The motion for leave to file a surreply (DN 229) will be denied.

A separate order will be entered herein this date in accordance with this opinion.

September 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

**IT IS SO ORDERED.**