UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CAUDILL SEED AND
WAREHOUSE COMPANY, INC.,                                           Plaintiff,

v.                                           Case No. 3:13-cv-82-CRS-CHL

JARROW FORMULAS, INC.,                                        Defendant.

### Memorandum Opinion and Order

### I. Introduction

Jarrow Formulas, Inc. ("Jarrow") moves to compel Caudill Seed and Warehouse Company, Inc. ("Caudill") to supplement its written discovery responses, a production of documents, and responses to requests for admission. (DN 192.) Caudill opposes Jarrow's motion in its entirety. (DN 199.) For the reasons stated below, the Court will **GRANT** Jarrow's motion in part and **DENY** its motion in part.

### II. Background

The procedural history of this case is quite long. The Court will detail only what is necessary for understanding its decision on Jarrow's motion to compel.

On October 29, 2015, the Court entered a memorandum opinion and order on the parties' competing motions for summary judgment. (DN 145, 146. *See also Caudill Seed and Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F. Supp. 3d 513 (W.D. Ky. 2015).) The Court stated as follows:

> Caudill Seed identified its trade secrets which it alleges were misappropriated as follows: (1) research and development on supplements, broccoli, and chemical compounds; (2) the general manufacturing process detailed in Caudill Seed's provisional patent application; (3) the precise process for spray-drying myrosinase; (4) vendor information for Caudill Seed's glucoraphanin and activated products; (5) customer pricing and sales information; and (6) the hard drive and research notebook as described herein.

1

(DN 145, #9417.)

In the motion for summary judgment, Jarrow Formulas argued that, "in response to its interrogatories, Caudill Seed gave a vague answer that identified only research and formulas, information in 'certain patent applications,' and a customer list." (DN 145, #9423.) "And Jarrow Formulas asserts that Caudill Seed failed to properly supplement its answers." (*Id.* at #9424.)

The Court denied Jarrow's motion for summary judgment. (*Id*. at #9435.) The Court rejected Jarrow's arguments regarding the particularity with which Caudill identified its trade secrets: "Jarrow Formulas may not approve of Caudill Seed's specificity in identifying the trade secrets, but it cannot be said that Jarrow Formulas would be prejudiced, because there is a factual record that Jarrow Formulas can use in its defense." (DN 145, #9424.) The Court found as follows:

> Caudill Seed has described its purported trade secrets with sufficient particularity to overcome summary judgment. We conclude that genuine issues of material fact exist with respect to whether the information so identified constitutes trade secrets, whether Jarrow Formulas made unauthorized use of Caudill's trade secrets, and whether Caudill Seed was injured thereby. A jury should decide these fact-based issues.

(*Id.* at #9428–29.) The Court concluded,

> Nothing in this opinion should be construed as a finding that Caudill Seed has met its burden to establish that its proprietary information constitutes trade secrets. Rather, we find only that Caudill Seed has identified what it claims to be trade secrets with the requisite particularity to overcome summary judgment.

(*Id.* at #9435.)

Jarrow now asks the Court to compel Caudill to supplement its responses to interrogatory numbers 1, 2, 6, and 16; request for production number 22; and request for admission numbers 21 and 23. (DN 192.)

**III. Legal Standard**

Rule 26(b)(1) defines the scope of and limits on discovery. It provides as follows:

> ***Scope in General***. Unless otherwise limited by court order, the scope of discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Additionally, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(e)(1) governs supplementation of a party's discovery responses. It imposes a duty of supplementation on a party who has responded to an interrogatory, request for production, or request for admission. Fed. R. Civ. P. 26(e)(1). The supplementation must be made "in a timely manner … if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)–(B).

IV. Analysis

Jarrow argues that Caudill has not provided full and fair supplementation under Rule 26(e). (DN 192-1, #11696.) Specifically, Jarrow maintains that Caudill's answers regarding Interrogatory Nos. 1, 2, 6, 16, Request for Production No. 22, and Request for Admission Nos. 21 and 23, do not describe the trade secrets that it has allegedly misappropriated in sufficient detail, or where trade secrets themselves are not at issue, Caudill's responses are purposefully vague and incomplete. (*Id*. at #11698). According to Jarrow, this lack of responsiveness renders it impossible for it to evaluate the veracity of Caudill's claims. (*Id*. at #11698–99.) In response, Caudill argues that Jarrow's motion to compel is merely an effort to re-litigate an issue already decided by the Court in its summary judgment decision. (DN 199-1, #12144.) Alternatively, Caudill also claims that because there is no "new" information regarding its trade secrets that did not exist in 2014 when initial discovery was conducted, it is not required to make any further disclosures. (*Id*. at #12145–46.) Finally, Caudill asserts that it has already sufficiently complied with Jarrow's requests for supplementation. (*Id*. at #12156.)

For the reasons stated below, the Court grants Jarrow's motion to compel regarding Interrogatories 1, and 2, Request for Production 22, and Requests for Admission 21 and 23, but denies its motion regarding Interrogatory 6 and 16.

**A. The Court's Summary Judgment Ruling Does Not End Caudill's Discovery Obligations**

First, Caudill contends that Jarrow's motion to compel is a "thinly-veiled attempt" to re-litigate issues already determined in the Court's summary judgment ruling. (DN 199-1, #12145.) There, the Court concluded that Caudill had provided enough information about their trade secrets to survive summary judgment. (DN 145, #9428) ("[W]e we find . . . that Caudill Seed

has identified what it claims to be trade secrets with the requisite particularity to overcome summary judgment.")

This does not necessarily mean, however, that Caudill adequately responded to Jarrow's discovery. It is axiomatic that the Court has broad discretion in determining the proper scope of discovery. *Chrysler Corp. v. Fedders Corp*., 643 F.2d 1229, 1240 (6th Cir. 1981); *Naartex Consulting Corp. v. Watt*, 722 F. 2d 779, 788 (D.C. Cir. 1983). Just because Caudill has alleged its trade secrets with sufficient particularity to overcome Jarrow's motion for summary judgment does not mean that its discovery obligations have ended. Rather, this Court can, in its discretion, order Caudill to supplement its responses to discovery. *See* Fed. R. Civ. P. 26(e)(1)(B) (discussing supplementing responses "as ordered by the court").

### B. Supplemental Discovery Is Not Limited to Only "New" Information

Next, Caudill argues that Rule 26(e) requires supplementation "only with new information not already revealed in discovery." (DN 199-1, #12146.) Caudill contends that this position is based on "clear Sixth Circuit precedent," citing *Baker Hughes Inc. v. S&S Chem., LLC,* 836 F. 3d 554, 568 (6th Cir. 2016). But Caudill's contention is a misstatement of *Baker Hughes*. There, the Sixth Circuit stated that Rule 26(e) requires a party to supplement its initial disclosures "only if the new information 'has not otherwise been made known to the other parties during the discovery process.'" *Id*. There is no requirement, as Caudill appears to proffer, that the *information* must be "new," in that a party only learned of it after it replied to the original discovery requests. (DN 199-1, #12146.) Instead, Rule 26(e) requires supplemental disclosure if a response is incomplete or incorrect and the *requesting party* has not already learned of the information as part of discovery. Fed. R. Civ. P. 26(e)(1)(A). Jarrow's request for

supplementation does exactly that – it seeks information that Jarrow claims it does not currently know and that Caudill has failed to provide up until this point.

Thus, the Court will examine in turn each of Caudill's responses that Jarrow has claimed are insufficient.

### C. Jarrow's Motion to Compel

1. Interrogatory No. 1

Jarrow's Interrogatory No. 1 requested that Caudill describe the alleged trade secrets that it claims Ashurst, its former employee, provided Jarrow. (DN 192-3, #1175.) In its response, Caudill listed six distinct trade secrets: (1) its research and development, from a 17–23 year period, related to dietary supplements and broccoli plant material ("Trade Secret (1)"); (2) the general manufacturing process for spray-dried myrosinase set forth in its provisional patent application on August 23, 2012; (3) the precise manufacturing process for spray-dried myrosinase; (4) and (5) vendor, customer pricing, and sales information; and (6) a hard drive and laboratory notebook allegedly taken by Ashurst and provided to Jarrow. (DN 199-20, #12294–96.) Caudill maintains that its supplemental responses are adequately descriptive. (DN 199, #12158.)

Answering interrogatories is more a matter of art than of science. *Faigin v. Kelly*, 184 F. 3d 67, 84 (1st Cir. 1999). Thus, the sufficiency of an answer to an interrogatory frequently depends on the surrounding circumstances. *Id*. In trade secrets cases, it may be insufficient to respond to discovery requests asking about the particulars of the trade secrets with broad categories of information. *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("[the plaintiff] must identify the specific characteristics of each trade

secret, such as a particular drawing, process, procedure, or cost/price data." (internal citations omitted)).

The Court finds that with respect to Trade Secret (1), (3), (4), (5,) and (6), Caudill has not satisfied its discovery obligations. Turning to Trade Secret (1) first, Caudill has provided that this particular secret includes "the chemical compounds at issue in this case," "the concentration, isolation, and testing of those compounds," "the extraction of those chemical compounds," and "the viable and nonviable processes for producing nutritional supplements, ingredients, or other consumer goods." (DN 199-20, #12294.) This response is vague and unhelpful. It is not enough to in effect say, "the trade secrets you took are the ones we say you took," without further identification. Caudill should have identified the specific chemical compounds it claims are its trade secrets, the processes of concentrating, isolating, and testing them, its specific and unique process for extracting the chemical compounds, etc., not merely given imprecise categories of information or claimed a "body of knowledge" as a trade secret. (DN 199-20, #12295); *See Knights Armament Co.*, 254 F.R.D. at 467 ("it is insufficient to describe the trade secrets by generic category") (citing *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324–25 (S.D. Fla. 2001)). Jarrow cannot be expected to know if its compounds and processes are the same as Caudill's unless Caudill reveals what its compounds and processes are. As the court in *Knights Armament* articulated, trade secrets are not made up of bodies of knowledge, but rather specific facts, formulas, documents, and other particularities. *Knights Armament Co.*, 254 F.R.D. at 467.

On the other hand, if Caudill has truly provided all the knowledge about Trade Secret (1) in its possession, then its discovery obligations regarding it have obviously come to an end. After all, Caudill cannot be expected to produce information that it legitimately does not have. If

7

this is the case, then Caudill shall affirmatively and explicitly state in a sworn supplemental response to the Interrogatory that it does not have more specific information in its possession. Caudill shall not continue to couch its interrogatory answers with overly general language which could lead – and in fact has led to – Jarrow concluding that Caudill has been withholding information.

For trade secret (2), the Court agrees with Caudill that it has met its discovery obligations. While Caudill did not expressly define what information in the provisional patent application it was claiming as a trade secret, because the patent application has been published and is now publically available, Jarrow now has full access to the document and any trade secrets contained therein.

Caudill's description of trade secret (3) has the same problem with vagueness as Trade Secret (1). Caudill states that it has developed "more precise parameters, including exact times, quantities, temperatures and pressures, process steps, and equipment." (DN 199-20, #12295.) What it has not stated, however, is what these times, quantities, temperatures and pressures, etc., actually are. Listing "exact times" as a trade secret is unhelpful to Jarrow as it cannot determine if its times are the same as Caudill's "exact times." *Id*.

Similarly, with trade secrets (4) and (5), Caudill should have provided detailed information about its vendors and customers, including specific names and prices, not merely stated that "specific prices" were a protected trade secret. *Id*. Once again, for trade secrets (3) through (5), Caudill is not required to produce information that it does not have, but it must explicitly state as much in a supplemental response to the Interrogatory.

Finally, with respect to trade secret (6), the information that Caudill claims was on the hard drive and laptop should also have been described in more detail, if Caudill can do so. It is

8

not enough to say that "specific formulations and process parameters" were on them. (*Id*. at #12296.)

2. Interrogatory No. 2

Jarrow's Interrogatory No. 2 requested that Caudill identify each person to whom its trade secrets had been disclosed and the manner of the disclosure. (DN 192-3, #1175.) In its response, Caudill indicated that with the exception of one new employee who had been hired after initial disclosures were made, no one else not already disclosed had received the trade secret information. (DN 199-20, #12298.) Caudill also limited its response to only those who have learned of the "substantive and confidential" aspects of the six trade secrets. *Id*. Its response only included individuals to whom Caudill itself relayed the trade secret information, stating that the phrase "is known or has been disclosed" is "vague, ambiguous, and unduly burdensome." *Id*. In its brief, Jarrow objected to this narrowing of its request, claiming that Caudill "has made itself arbiter of what is a substantive disclosure," and that Caudill should be required to disclose any person it knows to have trade secret information, even when Caudill itself did not actively provide it to them. (DN 192-1, #11710.)

District courts generally have the power to limit discovery where the information sought is overly broad or would be unduly burdensome to produce. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F. 3d 288, 305 (6th Cir. 2007). When a party served with an interrogatory objects on these grounds, the "the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982). *See also McLeod, Alexander, Powerl & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (reaching the same conclusion).

This is exactly what Caudill has done here. It has refused to fully answer Jarrow's request by claiming that complying would be unduly burdensome, but without explaining why. (DN 199-20, #12297.) The Court will not allow Caudill to refuse to provide the names of people it knows to have knowledge of its trade secrets by limiting itself to only people to whom they revealed the trade secrets directly. If Caudill is aware of anyone who has knowledge of its trade secrets, even if that person did not learn the information directly from a Caudill disclosure, then it shall make Jarrow aware of them in a supplemental response to the Interrogatory.

### 3. Interrogatory No. 6

Jarrow's Interrogatory No. 6 requested that Caudill describe "the full factual basis for [its] claim that Ashurst converted for [Jarrow's] use the [trade secrets], as alleged in Count II of its Amended Complaint." (DN 199-20, #12298.) Caudill objected to the interrogatory on two grounds: (1) it had already detailed the factual basis for its conversion claim in its Response in Opposition (DN 133); and (2) its conversion claim has already been dismissed in its entirety. (DN 199-20, #12298–99.) In response to (2), Jarrow claims that while the conversion claim has been dismissed, because Caudill has "incorporated" its common law conversion claim into its statutory KUTSA trade secrets claim, Caudill is still required to supplement its initial disclosure. (DN 192-1, #11719.)

The Court disagrees. Jarrow failed to cite any relevant statutes or case law in support of its assertion that Caudill's dismissed common law conversion claim is somehow "incorporated" into its statutory KUTSA claim. Even if it had, the Court agrees with Caudill that the answers Jarrow seeks are already available in other places, such as Caudill's Memorandum in Opposition (DN 133.) This type of duplicative discovery is explicitly prohibited by Rule 26(b). Fed. R. Civ. P. 26(b)(2)(c)(i). Thus, Jarrow's Motion to Compel is denied as to Interrogatory No. 6.

4. Interrogatory No. 16

Similar to Interrogatory No. 6, No. 16 asked Caudill to provide the "full factual basis for [Caudill's] claim that it is entitled to $12,000,000 in compensatory damages." (DN 199-20, #12300.) Caudill interpreted this interrogatory as a request to explain the basis behind the numbers themselves, rather than the how the damages were caused by Jarrow's alleged misappropriation, which Jarrow asserts was the question the interrogatory was asking. (DN 199-20, #12300–01; DN 192-1, #11720.) Specifically, Jarrow requested three categories of information: (1) a detailed description of the misappropriated trade secret; (2) how the misappropriations caused lost sales to Nutramax and NPS; and (3) why the lost sales were not the result of causes identified by Nutramax and NPS in their depositions. (DN 192-1, #11721.) Caudill did not reply to this argument in its response in opposition to Jarrow's Motion to Compel. (DN 199, #12163–64.)

While causation is an appropriate line of inquiry for an interrogatory, causation is not what Interrogatory No. 16 requested. In its brief, Jarrow claims that the interrogatory asked how each category of information was "caused by" its alleged misappropriation, but the "caused by" language is nowhere in Jarrow's interrogatory. (DN 192-1, #11720; DN 199-20, #12300.) The Court finds that Caudill properly answered the question as it was asked; Jarrow cannot use a motion to compel to change the question it asked.

5. Request for Production No. 22

Jarrow's Request for Production No. 22 simply requested "all documents relating to, referring to or concerning [the trade secrets]." (DN 199-20, #12304.) Yet Jarrow argues that Caudill's response was deficient because it did not "identify for each of its alleged trade secrets identified in response to Interrogatory 1, the documents [that relate] to the [specific] trade

11

secret." (DN 192-1, #11711.) Jarrow also highlights what it deems to be another problem with Caudill's response – the lack of "proper" documentation demonstrating Caudill's research and development of Trade Secret (1) over a period of at least seventeen years. (*Id*. at 11714–15.) According to Jarrow, Caudill has only produced a "limited number of invoices related to overhead expenses for a few years, and a spreadsheet showing scant information but no underlying documentation" in support of its damages numbers relating to its research and development. (*Id*. at 11715.) This lack of production, Jarrow argues, renders it impossible for Jarrow to independently verify and fact-check Caudill's asserted damages and trade secret claims. (*Id*. at 11715–16.) Although it failed to directly respond to Jarrow's arguments, Caudill stated that a search conducted for documents originating prior to 2014 returned no relevant documents that have not already been disclosed. (DN 199, #12164.)

The Court agrees with Jarrow; given the apparently limited scope of documents previously produced by Caudill under this request, it is difficult to accept Caudill's assertion that there are no other such documents at face value. This position rests on a conclusion that Caudill did not keep *any* records about Trade Secret (1) during its development over the better part of two decades, aside from the documents in Ashurst's possession. The Court now requires that Caudill either produce all additional documentation in its control or possession related to Trade Secret (1) or explicitly admit in a supplemental Response that it has no documentation aside from the financial statements, spreadsheet, and IRS forms that have already been produced. If Caudill produces responsive documents, such as personnel records, test results and reports, and expense data, then it shall also include a detailed statement explaining why its previous searches did not turn up those documents and why the newest search did.

6. Requests for Admission Nos. 21 and 23

Jarrow further claims that Caudill's responses to its Requests for Admission Nos. 21 and 23 are improper because it has continually refused to admit or deny that it has conducted certain research tests using specific components, temperatures, and times. (DN 192-1, #11722–23.) Jarrow has requested that this Court deem the allegations admitted if Caudill does not either affirm or deny them. (*Id*. at #11723.) Caudill has repeatedly maintained that it is "without sufficient knowledge to admit or deny the allegations." (DN 199, #12165.) Once again, the Court is skeptical of Caudill's position. As a company that specializes in this very type of research and development, it would be striking if Caudill was unaware if it has ever engaged in such activities in the past. Therefore, the Court is now ordering Caudill to sufficiently admit or deny Request for Admission No. 21 and No. 23. If Caudill continues to claim that it is without the required information to appropriately respond, then the Court may deem the allegations admitted.

7. Redacted Documents

Jarrow's last concern deals with redactions, made by Caudill, on documents that Caudill has produced, and Caudill's refusal to provide un-redacted versions except under limited circumstances. (DN 192-1, #11723.) On December 23, 2013, this Court entered an Agreed Protective Order ordering all parties to designate documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that they believed, in good faith, contained sensitive details about trade secrets, technical practices or methods, or other similar information. (DN 33, #298.) These documents would then be filed under seal. (*Id*.) According to Jarrow, Caudill has not only placed this classification on a number of documents, but it has further redacted "highly relevant" information on said documents and refused to allow Jarrow's attorneys to view the un-redacted

documents unless they traveled to Caudill's attorneys' office. (DN 192-1, #11723–24.) Caudill has alleged Jarrow has done the same to several of its documents, but it did not deny Jarrow's allegations. (DN 199, #12166.) Caudill's explanation for its demands is essentially that it does not trust Jarrow or its attorneys to keep the information confidential if they had unrestricted access to it. (*Id*.)

The Court orders both parties to comply with the Agreed Protective Order (DN 33) in full. To the extent that they redacted information from relevant documents with the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" classification, both parties shall immediately make those documents available to opposing counsel without the redactions. Caudill's mistrust of Jarrow and its attorneys is not a sufficient reason to refuse to comply with any Order of this Court, least of all one it agreed to and jointly proposed. The very purpose of the Agreed Protective Order was to facilitate the exchange of sensitive, proprietary documents.

### 8. The Scope of This Order

Nothing in this Order should be construed as a legal conclusion of whether the information Caudill has already disclosed is sufficient to constitute protected trade secrets. Instead, this Order is designed to bring the curtain down on what has been a long and contentious discovery process, which has already spanned multiple years. The Court is cognizant, however, of Caudill's repeated assertion in its brief that it has already provided Jarrow with all the documents and information about its alleged trade secrets it has. (DN 199, #12152–63.) Thus, if Caudill, as stated several times above, believes that it has already provided Jarrow with all relevant documents and information concerning its trade secrets, then it may say so in a supplemental response to the discovery, with supplemental answers to Interrogatories being signed by Caudill pursuant to Federal Rule of Civil Procedure 30.

## V. Conclusion

For the reasons stated above, the Motion to Compel (DN 192-1) is **GRANTED IN PART** and **DENIED IN PART**.

Accordingly,

IT IS **ORDERED** that the Motion to Compel (DN 192-1) is **GRANTED** as is set forth below:

1. **Interrogatory No. 1**: Describe in detail the Alleged Confidential Information that Ashurst allegedly provided to JFI, including, but not limited to, the Alleged Confidential Information that is referred to in the allegations in Paragraphs 13–20 and 42 of Caudill Seed's Amended Complaint. The Alleged Confidential Information must describe specific formulas, procedures, chemical compounds, and the like. If Caudill Seed does not have any information that describes its trade secrets in greater detail, then it shall state that the general categories of information are the only pieces of information it has about its alleged trade secrets.

2. **Interrogatory No. 2:** For each and every item of Alleged Confidential Information described in response to Interrogatory No.1, identify each and every person to whom the Alleged Confidential Information is known or has been disclosed and describe, in detail, the circumstances under which it became known or was disclosed.

3. **Request for Production No. 22:** All documents relating to, referring to, or concerning any Alleged Confidential Information. If new documents are produced, then Caudill Seed will also provide a detailed explanation as to why its previous searches did not return the new documents and why the newest search did.

4. **Request for Admission No. 21:** Admit that prior to May 1, 2011, Caudill Seed had not treated broccoli seed using supercritical fluid extraction with carbon dioxide at a pressure of 500 bar and a temperature of 180°F for 2 1/2 hours.

5. **Request for Admission No. 23**: Admit that prior to May 1, 2011, Caudill Seed had not combined (i) broccoli seed treated using supercritical fluid extraction with carbon dioxide at a pressure of 500 bar and a temperature of 185°F for 2 1/2 hours with (ii) broccoli seed treated using supercritical fluid extraction with carbon dioxide at a pressure of 300 bar and a temperature of 140°F.

6. Both Caudill and Jarrow must comply with the Agreed Protective Order (DN 33) in full.

Caudill and Jarrow must comply with the foregoing obligations on or before **December 22, 2017**.

The motion is **DENIED** in all other respects.


Cc: Counsel of record