UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CAUDILL SEED AND
WAREHOUSE COMPANY, INC.                                              PLAINTIFF

v.                                                   CIVIL ACTION NO. 3:13-CV-82-CRS

JARROW FORMULAS, INC.                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

Pursuant to the Court's Pretrial Order (DN 273), the parties have filed pretrial motions in limine. Pending before the Court and resolved in this Memorandum Opinion and Order are:

Caudill's Motion to Exclude Testimony and Reports of Leslie West and Kean Ashurst (DN 286)

Jarrow's Motion in Limine to Preclude the Testimony of William Wingate on Compensatory Damages (DN 291)

Jarrow's Motion to Strike the Supplemental Expert Report of William Wingate and the Portions of Plaintiff's Disclosure of Damages Based Thereon (DN 294)

The remaining motions in limine will be resolved by separate order.

**I.     Legal Standard**

The admissibility of expert witness testimony is governed by Federal Rules of Evidence 104(a), 701, 702, and 704, applied under the rubric established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

1

FED. R. EVID. 702. Therefore, the expert's opinion must be both relevant and reliable. *Daubert*, 509 U.S. at 589. To be relevant, there must be a "valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592. In other words, there must be a "fit" between the expert's opinion and the case at bar. *Id.* at 591. An opinion is reliable when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Kumho Tire,* 526 U.S. at 152. The proponent of the testimony must establish admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

In assessing reliability, *Daubert* offered four factors: testing, peer review and publication, potential rate of error, and general acceptance in the relevant community. *Id.* at 593–94. These factors are not exhaustive and may have no pertinence in certain cases. *Nelson v. Tenn.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Kumho Tire*, 526 U.S. at 141). Rule 702 offers an additional five factors for the Court to consider:

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;
>
> (3) Whether the expert has adequately accounted for alternative explanations;
>
> (4) Whether the expert is being careful as he would be in his regular professional work outside his paid litigation consulting; and
>
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

FED. R. EVID. 702 advisory committee's note to 2000 amendment (citations omitted).

## II. Discussion

Through these motions, Jarrow and Caudill challenge each other's experts. Caudill argues that Leslie West and Kean Ashurst should not be permitted to testify regarding whether Caudill's information are trade secrets. In turn, Jarrow argues that William Wingate, Caudill's damages expert, uses unreliable methods and was untimely in revealing his opinions.

### A. Caudill's Motion to Exclude Testimony and Reports of Leslie West and Kean Ashurst (DN 286)

Caudill makes four arguments for exclusion. First, it argues both experts should be excluded because a trade secret expert is improper. Second, it argues both trade secret experts would cause confusion for the jury. Third, it argues that West should be excluded because he lacks expertise in its trade secrets. Fourth, it argues that Ashurst should be excluded because he has a disqualifying conflict of interest.

#### i. Propriety of a "Trade Secret Expert"

Throughout the life of this case, the Court has repeatedly expressed concern at the concept of a "trade secret expert." In October 2014, the late Judge Heyburn stated:

> I guess my first reaction to this whole thing was that I'm not sure that an expert on what's a trade secret is even appropriate. People like, let's say, Ashurst can testify about, let's say, particular items of information or technology or whatever it is that could be a trade secret and can testify from their own personal knowledge of what it is and how important it is and that sort of thing. But the term "trade secret" is a legal definition. I'm not sure that we need an expert to give an opinion about what it is.

DN 113 at 7:11–19. After some discussion, Jarrow represented that West would be testifying as "partly fact and partly expert" as he would describe that "[h]e filed a patent application[ which] was published[ and] disclosed the same activated formula." *Id.* at 12:23–25. Judge Heyburn noted that "[t]hat's not really expert testimony. That's just his testimony." *Id.* at 13:1–2. Jarrow responded:

> That's right, Your Honor. In that regard, it would be fact testimony. I have personally been in situations where attorneys have argued that if someone testifies about something technical and they sound like an expert, they are an expert. There are other parts of his testimony where—that's why we named him as an expert as well—there are other parts of his testimony where he does not have firsthand knowledge, where he might go look at—for example, the next trade secret is the process of de-oiling broccoli seed using supercritical food extraction. Basically, when you make these broccoli supplements, the broccoli has a lot of oil in it, and you need to get the oil out of it, and so they use a process called supercritical food extraction to take the oil out of the broccoli. What Mr. West will testify to, Your Honor, is that this process of supercritical food extraction was in the public domain, it was known, and he's going to point to where it was in the public domain, where it was known, and thereby establish that it was not confidential.

*Id*. at 13:4–23.

Judge Heyburn later asked Caudill Seed whether there were employees of Caudill who could rebut West's assertions, to which counsel replied "Yes." *Id*. at 14:12–15. Judge Heyburn, addressing Caudill, stated "Your own people could or might have in the process of their own work or in the process of this litigation searched to see whether there are any references to these compounds prior to the time—that's not really expert [testimony]." *Id*. at 18:6–9. The Court noted that there was still "a question of the extent of what [West and Ashurst] can testify about," leaving it as "the subject for another day" *Id*. at 22:18, 23:17–18.

After the case was transferred to the undersigned, the Court was presented with a motion to strike portions of West's report. The Court ultimately determined that "the reports far exceed the stated purpose or, indeed, the permissible bounds of expert testimony in this case." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS, 2017 WL 4364204, at *5 (W.D. Ky. Sept. 29, 2017). Specifically, the Court found that West's conclusions that Caudill's information was "generally known and readily ascertainable by proper means based upon information in the public domain, and therefore could not constitute a trade secret as of and prior to May 1, 2011" were improper legal conclusions. *Id.* This was so because an "expert's opinion must stop short of embracing the legal terminology which frames the ultimate

4

legal conclusion which the jury must reach in the case." *Id.* (citing *Louisville Mktg., Inc. v. Jewelry Candles, LLC*, No. 3:15-CV-84-DJH, 2016 WL 6595094, at *6 (W.D. Ky. Nov. 4, 2016) (additional citations omitted)). The Court then reserved the question of West's admissibility pending the filing of a redacted report. *Id*. at 6. Twice, this Court has deferred ruling on whether Leslie West and Kean Ashurst will be permitted to testify as experts at trial. That day has finally come.

The Sixth Circuit has made clear that experts cannot offer testimony on legal conclusions. *Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir. 1985). While an opinion is not objectionable just because it embraces an ultimate issue, "the issue embraced must be a factual one." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (citing FED. R. EVID. 704(a)). The expert may "suggest the answer to the ultimate issue or . . . give the jury all the information from which it can draw inferences as to the ultimate issue." *Id*.

Exclusion is proper when an opinion "tracks almost verbatim the language of the applicable statute" or utilizes a term that "has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning." *Torres*, 758 F.2d at 151 (citations omitted). *See Id.* (proper exclusion of expert opinion that plaintiff was "discriminated against because of her national origin"); *Berry*, 25 F.3d at 1353 (proper exclusion of expert opinion that defendants were "deliberately indifferent"); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (same); *Stoler v. Penn Cent. Transp. Co.*, 583 F.2d 896, 898–99 (6th Cir. 1978) (proper exclusion of expert opinion that a railroad crossing was "extra hazardous," a legal term of art under governing law); *DeMerrell v. City of Cheboygan*, No. 05-2325, 2006 WL 3090133, at *7–8 (6th Cir. 2006) (proper exclusion of expert opinion that an officer-involved shooting was "objectively unreasonable").

5

In that vein, an expert opining that an item is or is not a "trade secret" is impermissible, as it states a legal conclusion. *See CDA of Am., Inc. v. Midland Life Ins. Co.*, No. 01-CV-837, 2006 WL 5349266, at *5 (S.D. Ohio March 27, 2006) (ordering counsel to ensure their expert's "testimony does not turn to the issue of whether or not [certain information] constituted a 'trade secret,' as that would, as a matter of law, encroach upon the province of the jury in breach of Federal Rule of Evidence 704."); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-CV-7242-SAS, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (expert cannot opine that defendants "misappropriated trade secrets"); *FedEx Ground Package System, Inc. v. Applications Inter. Corp.*, 695 F. Supp. 2d 216, 221–22 (W.D. Penn. 2010) (expert opinion excluded when opining on what is "required under the law" and whether the parties "complied with the Act").

In contrast, an expert may provide facts and analysis which lead the jury toward that conclusion. *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, No. 4:06-CV-114, 2009 WL 8592874, at *4 (N.D. Ohio Aug. 12, 2009), *aff'd*, 511 F. App'x 398, 412–413 (6th Cir. 2013) (exclusion of trade secret expert not warranted where the expert "offered opinions on certain subsidiary components of the overall issue" but did not opine whether the information was or was not a trade secret). *See also Raytheon Co. v. Indigo Sys. Corp.*, 598 F. Supp. 2d 817, 822 (E.D. Tex. 2009) (expert's "opinion that certain trade secrets consist merely of information that was in the public domain at the time of the alleged misappropriation is relevant and within his sphere of expertise"); *U.S. Gypsum Co. v. Lafarge North America Inc.*, 670 F. Supp. 2d 748, 756 (N.D. Ill. 2009) (permitting opinion testimony on "what information was generally available in the wallboard industry"); *Iofina, Inc. v. Igor Khalev*, No. CIV-14-1328-M, 2016 WL 6246730, at *3 (W.D. Okla. Oct. 25, 2016) ("Mr. Brix will not be testifying regarding the ultimate issue of whether any of plaintiffs' alleged trade secrets are, in fact, trade secrets. . . .

Mr. Brix limits his opinions to whether certain matters are generally known or readily ascertainable by others engaged in the business of iodine extraction").

In providing that opinion, the expert should not directly address the statutory terms of art, as doing so provides a legal opinion. *Torres*, 758 F.2d at 151 (opinion should not "track[] verbatim the language of the applicable statute"). *See also U.S. Gypsum Co. v. Lafarge North America Inc.*, 670 F. Supp. 2d 768, 774–75 (N.D. Ill. 2009) (permitting expert to testify but avoid using legal terminology like "misappropriated"); *Mintel Inter. Group, Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 683 (N.D. Ill. 2009) (expert witnesses "may attempt to explain the forensic record . . . but may not offer opinions on whether any conduct by Defendant" was impermissible). In the trade secret context, impermissible opinions include opinions that an item is not a trade secret or that it is "generally known" or "readily ascertainable." Instead, the expert must focus on facts and analysis, only referencing the specific phrasing of the statute when necessary and only as used by laypersons. *See Heflin v. Stewart Cty.*, 958 F.2d 709, 715 (6th Cir. 1992) (no exclusion where the expert "used 'deliberately indifferent' in the way an ordinary layman would to describe such conduct—to state his opinion on the ultimate fact, not to state a legal conclusion").

Therefore, West will not be permitted to opine that Caudill's alleged trade secrets are not trade secrets or that they do not fall within the statutory definition of a trade secret. *See* KY. REV. STAT. § 365.880 (defining trade secret). In presenting West's permissible scope of testimony, he should avoid utilizing legal terminology and statutory terms of art to the extent possible. Therefore, this ground is insufficient to warrant complete exclusion at this time. Failure to comply may result in exclusion at trial or an admonishment to the jury. *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 474 (D. Mass. 2017) ("any testimony which offers legal

conclusions along these lines is precluded and will be stricken in forceful terms if offered in the presence of the jury.").

Since West is precluded from opining—in a legally conclusory fashion—that Caudill's trade secrets are not "generally known" or "readily ascertainable," he should also remove such language from his report. For that purpose, the Court will order counsel for Jarrow to undertake further redactions. Those redacted portions are subject to exclusion from evidence under this Court's other order on the filed motions in limine. To the extent Ashurst's testimony or report shares those characteristics, it must also comply with this order.

### ii. Confusion of the Jury

Caudill asserts that the jury would be confused since "West pulls out components of Caudill's trade secrets and swears to impermissible legal conclusions that these elements of the trade secrets were generally known or readily ascertainable." DN 286 at 9. Of course, as the Court has already noted, "a trade secret can exist in a combination of characteristics each of which, by itself is in the public domain; that is, a new combination of known steps can be entitled to trade secret protection." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 161 F. Supp. 3d 513, 526 (W.D. Ky. Oct. 29, 2015) (citing *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 410–11 (6th Cir. 2006)). Ultimately, the jury must determine whether Caudill's combination of information is a trade secret. In so doing, they are permitted to examine the individual components as well as the complete process. Nothing in West's report appears sufficiently confusing that the jury would be prevented from undertaking a complete analysis. Therefore, this ground is insufficient to warrant exclusion.

### iii. West's Expertise on Caudill's Trade Secrets

Caudill attacks West's expertise based on West's statements that he is unsure what Caudill's trade secrets are and that he lacks expertise in certain aspects.

As to the first issue, Caudill points to West's statement in his report that he is "left guessing as to what Caudill precisely claims is a trade secret." DN 286-2 at 20. This confusion stems from Caudill's allegation that it maintains a trade secret in the "precise manufacturing processes Caudill Seed developed for spray-dried myrosinase and production of a myrosinase-activated glucoraphanin nutritional supplement ingredient." DN 276-7 at 5. Caudill originally went no further in its description. The contours of the alleged trade secrets have emerged as the case has continued. During discovery, an email from Ashurst to David Slaughter (from Henningsen Foods) described a process for extracting myrosinase. DN 286-2 at 19. West took this to be what Caudill was referencing and examined it as he did all the other alleged trade secrets. *Id*. Any further objection to West's testimony on that matter goes to weight, rather than admissibility, of his opinion.

As to the second issue, Caudill points to several instances in West's deposition where he asserts a lack of expertise. *See* DN 286-3 at 65:13–14 ("I'm not an expert in spray drying."); *Id.* at 201:10 ("I'm hardly an expert in supercritical CO2."); *Id.* at 203:22 ("I'm not an expert" on SCFE).[1] West is not required to be qualified as an expert in every minute category of this case's

---

[1] West later filed an errata sheet attempting to soften the language used in the deposition. DN 286-4 at 1 ("I do not consider myself an expert in spray drying, however I am very knowledgeable on the subject with many years of hands-on experience."); *Id.* at 2 ("I do not consider myself an expert in supercritical CO2, although I am very knowledgeable on the subject with many years of hands-on experience"); *Id.* ("I do not consider myself an expert, although I am very knowledgeable on the subject with many years of hands-on experience with supercritical CO2"). Substantive changes are not permitted to deposition testimony through errata sheets. *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565 (6th Cir. 2009) ("Rule 30(e) does not allow one to alter what was said under oath. . . . If that were the case, one could merely answer the questions with no thought at all[ ], then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.") (additional citation omitted).

trade secrets. "Gaps in the qualifications or knowledge of an expert ordinarily run to the weight of the particular expert's testimony rather than its admissibility." *Burke v. U-Haul Intern., Inc.*, No. 3:03-CV-32-H, 2006 WL 3043421, at *3 (W.D. Ky. Oct. 20, 2006). West may be subjected to cross-examination regarding his qualifications at trial—including impeachment with his own deposition testimony—permitting the jury to weigh credibility. Therefore, this ground is insufficient to warrant exclusion.

### iv. Ashurst's Conflict of Interest

Caudill contends that Ashurst should be excluded due to a conflict of interest. The alleged conflict arises from Caudill's claims that Ashurst participated in misappropriation and remains employed by Jarrow. As a result, it concludes, he has a direct financial interest which is disqualifying. For that proposition, Caudill cites to cases where courts have ruled that it violates public policy for expert witnesses to testify based on a contingency fee. *See Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002) (such financial arrangements "provide incentives for the falsification or exaggeration of testimony"). *See also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 117 (AM. L. INST. 2000) ("A lawyer may not offer or pay to a witness any consideration contingent on the . . . outcome of the litigation."); KY. SUP. CT. R. 3.130(3.4) ("it is improper to pay an expert witness a contingent fee").

Another court cited by Caudill held that the underlying principles stretched further:

> While experts are almost universally compensated for their opinion, public policy has long made a distinction between paid experts who have an *indirect incentive* to win the approval of their employers (the client and attorneys) on the one hand, and experts who have a *direct financial stake* in the outcome of the litigation on the other. Public policy tolerates the former category of expert testimony as a necessary evil: although it carries inherent risks of witness bias, those risks can be minimized by the adversarial process and are outweighed by the reality that the modern legal system would collapse without the aid of expert testimony. However, courts of this country draw a line where the expert's incentive structure crosses the threshold from an *indirect incentive* to reach a certain conclusion to a *direct financial interest*

in doing so. Once the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded. Under those rare circumstances, the conflict of interest is so great, and raises so many "serious questions about the integrity of [the witnesses'] expert testimony," that to admit the conflicted testimony would violate public policy.

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV-11-7098-AB, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (citations omitted) (emphasis in original). In *Perfect 10*, the proposed witness was the sole shareholder of the plaintiff company and admitted during deposition that it would be in his interest for the plaintiff to prevail. *Id.* at 5. Finding that he had a direct financial stake in the litigation, the court excluded the witness. *Id.*

As an initial matter, the Court is not convinced that exclusion of experts is required in a scenario where the expert has some interest in the outcome of the litigation outside of a contingency fee. In contrast, rulings from the Sixth Circuit indicate otherwise. *See e.g. Cole v. Reader's Digest Sales & Servs., Inc.*, 707, 708 (6th Cir. 2005) (finding expert married to the plaintiff has a bias but is permitted to testify, as the conflict of interest "goes to the weight of the evidence, not its admissibility.") (citing *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) ("The trier of fact should be able to discount for so obvious a conflict of interest.")). However, even *arguendo* applying the rule from *Perfect 10*, exclusion would not be warranted. Ashurst has already had his court battle with Caudill. He is not a party in this litigation and Jarrow cannot be found liable based solely on Ashurst's conduct absent some culpable acts by Jarrow. The only connection is Ashurst's continued employment by Jarrow and the open question of his actions in the alleged incidents of misappropriation. Even at its worst, Ashurst has only an indirect incentive in the case as an employee of Jarrow. To the extent a conflict of interests exists, counsel is capable of performing a thorough cross-examination and letting the

jury weigh credibility. Therefore, subject to the foregoing restrictions, West and Ashurst will be permitted to testify as experts and Caudill's motion to the contrary will be denied.

> B. **Jarrow's Motion in Limine to Preclude the Testimony of William Wingate on Compensatory Damages (DN 291)**

In attacking Wingate's opinions, Jarrow makes mostly factual arguments.[2] Of course, Wingate's opinion must have an analytical "fit" with the facts. *Daubert*, 509 U.S. at 591. However, a damages expert is not required to examine every scintilla of evidence in the case to determine whether the underlying misconduct occurred. Instead, he is entitled to rely on the factual assertions of counsel and the corporate representatives in preparing a damages tabulation. *KCH Servs., Inc. v. Vanaire, Inc.*, No. 05-777-C, 2010 WL 1416672, at *2 (W.D. Ky. March 31, 2010) (recognizing that professional standards "permit the expert to rely on 'facts or assumptions' provided by the party seeking to offer the expert's opinion.") (citation omitted). On a motion to exclude experts, it is inappropriate for the Court to delve into the factual predicate of the expert's opinion. Indeed, as this Court noted at summary judgment with regard to excluding Wingate:

> Much of Jarrow Formulas' motion in limine to preclude this expert testimony attacks the factual foundation for his damage calculation. These fact-based arguments are dependent upon the proof at trial such as whether Caudill Seed can prove compensable lost business opportunities and compensable lost profits on future sales of goods to Jarrow Formulas. Similarly, Jarrow Formulas takes issue with the inclusion of R & D expenses over a 17-year period which it claims were unrelated to the trade secrets alleged in this case. Clearly, Wingate's damage calculations are only as good as the Caudill Seed's proof of them. However, Jarrow Formulas' "junk in, junk out" theory does not reach the methodology of the calculation, but rather attacks the factual foundation upon which the calculations are premised, going to the weight of the evidence.

---

[2] For example, it argues that: Caudill retained access to its trade secrets; not all of the damages apportioned to the trade secrets by Wingate were, in fact, related to the development of the trade secrets; Wingate made no effort to separate other Caudill entities from the damages calculation; Wingate wrongly assumed that Jarrow had to buy from Caudill, that Caudill would consummate agreements with Nutramax and Natural Products, and that the damages flowed from misappropriation.

*Caudill Seed*, 161 F. Supp. 3d at 528–29. Therefore, the motion will be denied.

### C. Jarrow's Motion to Strike the Supplemental Expert Report of William Wingate and the Portions of Plaintiff's Disclosure of Damages Based Thereon (DN 294)

An expert has a duty to supplement their initial report when they learn that information is incomplete or incorrect. FED. R. CIV. P. 26(e). However, the supplementation can not "fundamentally change" the initial disclosure. *KCH Servs.*, 2010 WL 1416672, at *3. *See also James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374-DCR, 2014 WL 1664263, at *9 (E.D. Ky. April 25, 2014) (not supplemental when new report addresses a "completely different subject matter"); *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (not supplemental when the new report's opinions "are different from, rather than supplemental to, the information contained in the" initial report). Put another way, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener*, 181 F.R.D. at 640.

For damages experts, they may update their calculations based on new evidence but may not consider entirely new theories of damages as supplementation. *KCH Servs.*, 2010 WL 1416672, at *3 (denying motion to exclude because, "[w]hile elements of damages were added based on new information, Gemini did not fundamentally change his method of calculating damages from one report to the next."). *See also Scatuorchio*, 2014 WL 1664263, at *9 (report adding new theories of damages is not supplemental). As a result, Wingate's second report is not supplemental and must be excluded "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The Court finds that Jarrow would not be prejudiced by permitting Caudill to proceed with an unjust enrichment theory. Such a theory is explicitly contemplated by KUTSA. KY. REV.

STAT. § 365.884(1). Most importantly, Jarrow has been aware of the existence of unjust enrichment issues since the beginning of this case. Unjust enrichment was originally an independent claim in Caudill's complaint and first amended complaint, originally filed January 25, 2013, and February 14, 2013. DN 1 at 11; DN 6 at 11–12. The interrogatory responses also revealed that unjust enrichment damages were being sought. DN 202-5 at 15. While discovery was ongoing, Caudill repeatedly put Jarrow on notice that it was seeking documents related to an unjust enrichment theory of damages. DN 72-1 at 17 (Caudill brief arguing documents sought were "relevant in establishing damages that Caudill Seed may be entitled to under KUTSA for unjust enrichment and disgorgement of profits"); DN 190-16 at 5 (Caudill letter to counsel seeking information related to its "unjust enrichment damages theory"). This Court even explicitly recognized in 2017 that Caudill was seeking unjust enrichment damages under KUTSA. *Caudill Seed*, 2017 WL 4364204, at *8 (DN 251 at 14).

Despite Jarrow's vigorous argument otherwise, the presentation of an unjust enrichment damages calculation should not surprise it. The theory of unjust enrichment in some form has existed in this case for over six years. While it would have been ideal for Caudill to reveal Wingate's opinion earlier, the Court cannot say the late disclosure was without diligence or will cause harm to Jarrow. Jarrow also challenges the supplemental report as unreliable, rehashing many arguments based on the facts. For the same reasons described in (II)(B), *supra*, these arguments are insufficient to warrant exclusion. Therefore, the motion will be denied as to those portions of the report.

Finally, Jarrow argues that Wingate's opinion on prejudgment interest should be stricken and precluded. Awarding pre-judgment interest for an unliquidated damages claim is a matter of discretion placed with the trial court and determined post-verdict, if necessary. *Nucor Corp. v.*

14

*Gen. Elec. Co.*, 812 S.W.2d 136, 144 (Ky. 1991); *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 716–17 (E.D. Ky. 2010). Therefore, to the extent Wingate wishes to opine on prejudgment interest or it is addressed in his report, the motion will be granted.

## III. Order

For the reasons set forth above, and the Court being otherwise sufficiently advised, the Court orders:

Caudill's Motion to Exclude Testimony and Reports of Leslie West and Kean Ashurst (DN 286) is **DENIED**.

Jarrow's Motion in Limine to Preclude the Testimony of William Wingate on Compensatory Damages (DN 291) is **DENIED**.

Jarrow's Motion to Strike the Supplemental Expert Report of William Wingate and the Portions of Plaintiff's Disclosure of Damages Based Thereon (DN 294) is **GRANTED IN PART AND DENIED IN PART**, as described herein.

**IT IS SO ORDERED.**