UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CAUDILL SEED and WAREHOUSE           )
COMPANY, INC. d/b/a CAUDILL SEED      )
COMPANY,                             )
                                     )
        Plaintiff,                   )          Civil Action No. 3:13-CV-82-CRS-CHL
                                     )
v.                                   )          *Electronically Filed*
                                     )
JARROW FORMULAS, INC.,               )
                                     )
        Defendant.                   )

**MEMORANDUM OF CAUDILL SEED AND WAREHOUSE COMPANY
IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS**

Plaintiff Caudill Seed & Warehouse Company, Inc. ("Caudill Seed"), by counsel and

pursuant to the Court's Order entered May 7, 2019 [DN 354], states as follows for its

Memorandum in Support of Its Proposed Jury Instructions:

**INTRODUCTION**

In drafting proposed jury instructions and verdict forms for trial, Caudill Seed

endeavored to follow the instructions that this Court recently gave in *Babcock Power Inc. v.

Kapsalis*, No. 3:13-cv-717 (W.D. Ky. 2019), with succinct additions where appropriate for the

context of this case.  Likewise, Caudill Seed's proposed verdict forms are nearly identical to

those that this Court used in the *Babcock Power* trial.  All told, Caudill Seed's proposed final

instructions span 20 pages, and include 5 straightforward interrogatories.  *See* Caudill Seed

proposed instructions, attached as Exhibit 1.

By contrast, Defendant Jarrow Formulas, Inc. ("Jarrow") demands an onerous and

complicated set of final instructions and verdict forms, spanning 34 pages and 67 separate jury

interrogatories.  *See* Jarrow proposed instructions at Exhibit 2.  Jarrow's proposed instructions

depart, not only from *Babcock Power*, but also from black letter law in Kentucky.  *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000) ("jury instructions should not contain an abundance of detail, but should provide only the bare bones of the question for jury determination.  This skeleton may then be fleshed out by the counsel on closing argument.")  *See also Young v. Sears Roebuck & Co.*, 2007 WL 2068628, **3-4 (E.D. Ky. 2007) (accord).

Jarrow's proposed instructions also contain numerous misstatements of law, and an absurd number of interrogatories.  No jury should be required to plow through Jarrow's proposed instructions, much less 67 separate interrogatories.  *See Ball v. E.W. Scripps Co.*, 801 S.W.2d 684, 691 (Ky. 1990) (rejecting proposed instructions that were 47 pages long and contained 41 "jury charges" as "both unsuitable and unreasonable"); *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 122-23 (Ky. 1991) (rejecting proposed instructions that were "unnecessarily specific and limiting" and "misleading and confusing.").

Jarrow's proposed instructions are also remarkable because they openly defy this Court's recent motion in limine rulings, by directing the jury to evaluate and answer specific interrogatories as to whether Caudill Seed "illegally" irradiated broccoli seed products, or advertised its products in violation of FDA regulations.  *See* March 29, 2019 Order [DN 341] at p. 3 ("Jarrow's counterclaims, based on Caudill's sale of irradiated broccoli seeds, were all dismissed … the evidence regarding the counterclaims is irrelevant and confusing."); *id.* at p. 5 ("The [FDA] letter is irrelevant, confusing, and unduly prejudicial.").

Likewise, Jarrow has taken the remarkable position that the jury should allocate fault to its own trade secret "expert," Kean Ashurst, even though Jarrow failed to bring Ashurst into the litigation on a contribution or indemnity claim.  Research has revealed no precedent to support a

defendant's demand that the jury be required to consider the fault of its own "expert" witness. Nor is an apportionment instruction appropriate here in any event.  *See* pages 20-27, *infra*.

These are but a few examples of the improprieties within Jarrow's proposed instructions. Below, Caudill Seed has attempted to efficiently outline and brief the 12 discrete areas of the jury instructions where the parties sharply disagree, in the order those disagreements arise within the competing jury instructions.  In short, the parties disagree on how the Court should define the terms "Trade Secret" (Section I, *infra*), and "Misappropriation" (Section II, *infra*); how the Court should instruct the jury on damages (Section III , *infra*), and Kean Ashurst's involvement (Section IV, *infra*); and how the Court should style its verdict forms (Section V, *infra*).

Put simply, Caudill Seed's proposed jury instructions best conform to Kentucky's "bare bones" standard, as well as applicable law and this Court's instructions in *Babcock Power*.

## **ARGUMENT**

## I.      **JURY INSTRUCTION NO. 3: "TRADE SECRET" DEFINED.**

**The Court Should Adopt Caudill Seed's Proposed Instruction Defining and Describing a "Trade Secret" under Kentucky law.**

The parties do not agree on how the phrase "Trade Secret" should be defined and described for the jury.  Neither side disputes that the statutory language from KRS 365.880(4) should be included in instruction.

Instead, the contestants part ways over whether the jury should be informed that the results of "trial and error," and the "negative know-how" that results, may constitute a trade secret.  Jarrow, for its part, does not want the Court to inform the jury of this aspect of the law, because that is the centerpiece of Caudill Seed's "Trade Secret No. 1" in this case.

At the summary judgment stage, the Court observed the law on this point, as follows:

In Norbrook Laboratories Ltd v. G. C. Hanford Mfg. Co., 297 F.Supp2d 463, 485 (N.D.N.Y. 2003), the court found that the trial and error work by Norbrook

Laboratories in developing the in situ method for the manufacture of PGP injections was entitled to trade secret protection. The court cited a number of cases in which the trade secret consisted of a process derived from **years of trial and error research** rather than a finished product, yet found that a trade secret existed due to an investment of substantial time and money in experimentation with different formulations, a*nd the sum of that work "serve[*d] as a guide, charting the way through the many problems and decisions faced in designing ... and developing [the particular technology][citation omitted]." Id. at 485. In particular, the court quoted Imperial Chemical, supra, noting the court's rationale that*:*

> Although the components of the [manufacturing process] are available in [literature available to the public**], development of the know-how** ... to operate a commercial process using such a [component] based upon information in the public domain would have required vast research, at great expense in money and time, plus considerable **trial and error** over an extended period of time. [I]t was obviously [defendant's] purpose to avoid the difficulties and the time and expense that would be required to arrive at a commercially feasible process from a synthesis of the information disclosed in the literature.

*Id., quoting Imperial Chemical*, 342 F.2d. at 743.

October 28, 2015 Memorandum Opinion [DN 145] at pp. 21-22 (emphasis added).

Given that the Court found these authorities pertinent to its analysis of the "trial and error" or "negative know-how" concepts presented in this trade secret dispute, Caudill Seed submits that the jury should also receive guidance on this point of law.  *See also Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist LEXIS 37382, at *16-18 (S.D. Cal. Apr. 15, 2010) (noting that "the definition of a trade secret includes information that has commercial value from a negative viewpoint, such as the results of lengthy and expensive research which proves that a certain process will not work" (internal citations omitted)).

Accordingly, Caudill Seed's proposed Jury Instruction No. 3, defining "Trade Secret," includes a simple sentence, as follows:

> A trade secret may also include the process of trial and error; learning what methods, formulas, or techniques do not work.

*See* Exhibit 1 at p. 10.

Caudill Seed respectfully requests that the Court include this sentence, or a similar phrase, in the final jury instructions.

## II.     JURY INSTRUCTION NO. 7: "MISAPPROPRIATION" DEFINED

The parties also disagree on how the term "Misappropriation" should be defined and described for the jury.  Although the parties agree that the statutory language from KRS 365.880(2) should be utilized, the contestants part ways over:

> (A)     whether the burden ever shifts to Jarrow to prove that its product was not substantially derived from Caudill Seed's trade secrets;
>
> (B)     whether Caudill Seed must prove that Jarrow's competing broccoli pill product incorporates an "innovative and novel feature shared by" Caudill Seed's trade secrets; and
>
> (C)     whether the Court should inform the jury of Caudill Seed's prior suit against Kean Ashurst, and how that may limit Caudill Seed's theories of recovery against Jarrow.

As detailed below, Caudill Seed has proposed a reasonable and necessary definition and description of "Misappropriation" for this case.  Whereas, Jarrow proposes an instruction that does not properly account for the issues presented in the case, applicable law, or the Court's prior motion in limine rulings.

### A.     The Court Should Instruct the Jury as to the Legal Contours of Jarrow's Independent Invention Argument, Including the Burden Shift That Results.

It is undisputed that Caudill and Jarrow sell a competing supplement derived from broccoli seed extract.  Jarrow did not begin manufacturing and selling its product until shortly after hiring Kean Ashurst and receiving confidential trade information that belonged to Caudill Seed.  In defending the propriety of its newfound product, Jarrow claims that it developed "BroccoMax" independently, without use of any trade secrets belonging to Caudill Seed.

5

In view of this situation, Caudill Seed's proposed Jury Instruction No. 7, which defines and describes "Misappropriation" under the KUTSA, contains the following paragraph that Jarrow contests:

> Thus, it would be improper for Jarrow Formulas to have acquired the alleged trade secret from anyone who Jarrow Formulas knew or had reason to know used improper means to obtain the information. Additionally, it would constitute misappropriation if Jarrow Formulas used Caudill Seed's trade secrets and made improvements or modifications to them, so long as Jarrow Formulas' process was substantially derived from Caudill Seed's trade secrets and not from public information. To the extent Jarrow Formulas claims that it derived its product or process independently, and without use of any trade secrets possessed by Caudill Seed, **then the burden falls on Jarrow Formulas to prove that assertion during trial.**

*See* Exhibit 1 at p. 16 (emphasis added).

This paragraph is consistent with applicable law, in a "competing product" trade secret dispute. The Ninth Circuit explains the rule in the following way:

> As a number of cases have pointed out, disclosure of the secret to the defendant, followed by manufacture of a closely similar device by the defendant, **shifts to the defendant the burden of going forward with evidence to prove**, if it can, that it arrived at the process by independent invention. There is substantial authority for the proposition that the defendant in such a case ought to offer more than the verbal testimony of interested witnesses.

*Droeger v. Welsh Sporting Goods Corp.*, 541 F.2d 790, 793 (9th Cir. 1976) (emphasis added).

This reasoning is consistent with many courts across the nation. *See*, *e.g.*, *Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 572 (3d Cir. 2003) ("raising independent development simply shifts the burden of production to the defendant"); *Cybertek Computer Prod., Inc. v. Whitfield*, 1977 WL 22730, at *6 (Cal. Super. Ct. Dec. 1, 1977) (citing the "well recognized principle" that claiming independent development "places upon the defendant a heavy burden of persuasion to show that the production was a result of independent development and not from the

use of information confidentially secured during the prior employment."); *Bolt Assocs. v. Alpine Geophysical Assocs.*, 365 F.2d 742, 749-50 (3d Cir. 1966) ("a heavy burden of persuasion rests upon one so charged to show that the production was the result of independent development and not from the use of information confidentially reposed."); *Sokol Crystal Prods. v. DSC Communs. Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994) (citing with approval *Droeger*, *supra*).

Without a complete instruction on this point of law, the jury is likely to be confused on what the law requires of contestants in a "competing product" trade secret dispute of this sort. Thus, Caudill Seed respectfully requests that the Court incorporate some or all of its proposed "burden shifting" language within the final jury instructions.

**B.    The Court Should Reject Jarrow's Claim that Caudill Seed Must Prove That its Trade Secrets are Scientifically "Innovative or Novel" Before Imposing Liability.**

Jarrow's proposed instruction on "Misappropriation" contains an inaccurate statement of the law, as to what Caudill Seed must prove to prevail, and how the jury should weigh circumstantial evidence in this case.  Specifically, Jarrow insists that Jury Instruction No. 7 must include the following paragraph:

> In order to **draw a conclusion of misappropriation from circumstantial evidence** of use, you must find (1) that Jarrow Formulas had access to Caudill Seed's alleged trade secret; (2) that there is similarity between Caudill Seed's alleged trade secret and Jarrow Formulas' process or product; and (3) that such similarity represents **an innovative or novel** feature shared by Caudill Seed's alleged trade secret and Jarrow Formulas' process or product.

*See* Jarrow proposed instructions, Exhibit 2, at p. 16 (emphasis added).

Simply put, and as this Court has held, the "law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for [the jury] to decide how much weight to give to any evidence."  *See Babcock Power* jury instructions, attached as Exhibit 3, at p. 2.  Thus, it is plainly improper for Jarrow to demand a jury instruction that purports to

distinguish between direct and circumstantial evidence, and forbid the jury from considering circumstantial evidence unless Caudill Seed first proves three additional elements that are nowhere to be found within the Kentucky Uniform Trade Secrets Act ("KUTSA").

Likewise, Jarrow's proposed instruction erroneously attempts to graft new, restrictive language into the KUTSA which is not supported by the law.  There is no requirement that Caudill Seed prove that any of its trade secrets are "innovative or novel."  Rather, Caudill Seed need only prove that the subject information falls within the definition of a "Trade Secret" under KRS 365.880(4).  There is no reason for the Court to superimpose the subjective concept of "innovative or novel," over top of the Trade Secret definition approved by the Legislature.

Further, and once again, Jarrow conflates the distinct area of patent law, with trade secret law.  *See, e.g., Bilski v. Kappos*, 561 U.S. 593, 602 (U.S. 2010) ("… in order to receive the Patent Act's protection the claimed invention must also satisfy "the conditions and requirements of this title." § 101. Those requirements include that the invention be ***novel***, see § 102 …").

For these reasons, Caudill Seed respectfully requests that the Court reject the aforementioned paragraph offered by Jarrow within its proposed instructions.

### C.  The Jury Instructions Should Not Mislead the Jury on Prior Litigation, or Improperly Constrain the Jury's Consideration of Conduct by Kean Ashurst.

This Court has previously ruled that "insofar as Jarrow's liability is predicated solely on Ashurst's acts as its alleged agent, Caudill's KUTSA claim is barred under the doctrine of res judicata.  Again, Caudill's KUTSA claim is not barred insofar as it is predicated on the independent acts of Jarrow."  (DN 89, p. 11).

With that ruling in mind, Jarrow demands that the instructions specifically inform the jury that Caudill Seed previously sued Kean Ashurst in state court (hereinafter the "Prior Suit").

The Court need not do so, considering that the Court has already ruled, at the motion in limine stage, that "[t]he prior litigation between Ashurst and Caudill is irrelevant …"  (DN 341, p. 4).

Indeed, discussion of the Prior Suit would unduly prejudice Caudill Seed, similar to how the mention of liability insurance prejudices a defendant in a civil action, requiring a mistrial. *See, e.g., White v. Piles*, 589 S.W.2d 220, 222 (Ky. App. 1979).  It is highly likely that the jury, if advised of the irrelevant Prior Suit, will form two impermissible and highly prejudicial beliefs: (1) that Caudill Seed did not prevail in the Prior Suit, requiring this action against Jarrow; and/or (2) that Caudill Seed already recovered money damages of some kind.  Thus, mention of the Prior Suit in the instructions only runs the risk of prejudicing Caudill Seed, and only stands to benefit Jarrow.  Conversely, instructing the jury on the proper bases for Jarrow's liability in this case, *without mention of the Prior Suit*, is an accurate instruction that imposes no risk of prejudice to any party.

To account for the Court's prior rulings on the issue of how Caudill Seed may prove liability against Jarrow, the parties propose competing language within Jury Instruction No. 7 (re: Misappropriation), as follows:

| Caudill Seed Proposed Remainder of Instruction No. 7 | Jarrow's Proposed Remainder of Instruction No. 7 |
| --- | --- |
| …Caudill Seed's KUTSA claim against Jarrow Formulas may not be predicated solely on any independent acts of misappropriation by Kean Ashurst that Jarrow Formulas did not know or have reason to know about. Rather, Jarrow Formulas' liability must be evaluated based on what other officers, employees or agents, for Jarrow Formulas, knew or should have known about any information received from Kean Ashurst, what they did with that information, and whether their acts or omissions constitute | Additionally, Caudill Seed previously sued Kean Ashurst and that case was terminated. As a result, Caudill Seed's KUTSA claim against Jarrow Formulas may not be predicated solely on the acts or omissions of Kean Ashurst. Rather, Jarrow Formulas' liability must be evaluated based on what other officers, employees or agents, for Jarrow Formulas, knew or should have known based on information received from Kean Ashurst, and what they did with that information. Thus, in order to prove misappropriation, Caudill Seed must demonstrate, by a preponderance of the |

9

| "misappropriation" by Jarrow Formulas as that term is defined within this Jury Instruction No. 7. | evidence, that another officer, employee, or agent of Jarrow Formulas, other than Kean Ashurst, acquired, used, or disclosed a trade secret belonging to Caudill Seed. |
|---|---|

*Compare* Exh. 1 at p. 17 (Caudill instruction) *with* Exh. 2 at p. 17 (Jarrow instruction).

Plainly, Jarrow's proposed language improperly alerts the jury to Caudill Seed's prior lawsuit against Kean Ashurst. In addition, Jarrow's proposed language could be construed to improperly prohibit the jury from considering conduct of Kean Ashurst that was induced or accepted by Jarrow. More specifically, Jarrow's proposed language prejudicially directs the jury to completely disregard the actions of Kean Ashurst in evaluating Jarrow's liability. That is not a proper statement of applicable law, or this Court's prior rulings on the issue.

Indeed, in addressing the parties' various motions *in limine*, the Court denied Jarrow's motion *in limine* seeking to limit the use of evidence in this manner, and clarified:

> Caudill is precluded from arguing that Jarrow is liable based solely on Ashurst's acts as its agent absent some wrongdoing by Jarrow. DN 89 at 11. However, the argument that Jarrow **induced** Ashurst to take Caudill's trade secrets and that Jarrow then improperly **accepted** them is not barred. *Id. See also* KY. REV. STAT. § 365.880(2) (multiple definitions of "misappropriation" under KUTSA). **Ashurst's activities and knowledge may be examined in making that proof under KUTSA.** As a result, evidence of Ashurst's misappropriation is relevant and the prejudice does not substantially outweigh the probative value of the evidence.

DN 341, p. 7 (emphasis added).

With this ruling in mind, Caudill Seed submits that its proposed instruction better captures the legal principles at issue, and does not contain the subtle legal errors that are woven into the Jarrow instruction. Caudill Seed therefore requests that the Court adopt its proposed Jury Instruction No. 7, and reject the competing instructions offered by Jarrow.

20114368.3

### III.   JURY INSTRUCTION NO. 9: MISAPPROPRIATION OF TRADE SECRETS – DAMAGES

The parties already agree on a fulsome instruction concerning "Damages – Generally." *See* Parties' Proposed Jury Instructions, DN 359, at p. 14.  The contestants part ways after that.

In follow up, Caudill proposes a one page damages instruction that is specific to a KUTSA claim, and the damage theories that Caudill will pursue at trial.  *See* Exh. 1 at p. 19. Caudill's instruction provides a bare bones summary of the law as it applies to "actual loss" under KRS 365.884(1), as well as the lost profit and research and development costs that a jury may award.  *See* Exh. 1 at p. 19.  In addition, Caudill's proposed instruction addresses the concept of unjust enrichment, which is also an allowable award under the applicable damages statute.  *See* KRS 365.884.  Caudill Seed's proposed instruction also directs the jury not to "double count" any aspect of its damage claim, in order to conform to the damages statute.  *See* Exh. 1 at p. 19.

In contrast, Jarrow insists on a 3½ page damage instruction that goes well beyond Kentucky's bare bones approach to jury instructions.  Worse yet, Jarrow's proposed instruction is fraught with redundancy, legal errors, and argument that runs afoul of the Court's motion in limine rulings.  Caudill Seed has identified at least six distinct areas, where Jarrow's proposed damage instruction departs from applicable law.  Each is detailed below.

### A.   The Jury Should Not Be Instructed to Scour and Evaluate the Public Domain at Every Point After the 2011 Misappropriation, to Try and Determine if, and when, Caudill Seed's Trade Secret Information May Have Become "Available" to Jarrow "in the Absence of the Alleged Misappropriation."

Jarrow has submitted a proposed instruction that would improperly limit Caudill Seed's damages claims to "the period of time that the information would have remained unavailable to Jarrow Formulas in the absence of misappropriation."  *See* Exh. 2, at p. 19.  In doing so, Jarrow would have the jury engage in the onerous task of reviewing and considering the "state of the

industry," the "level of skill of those working in the industry," and "any intervening publications" at every point subsequent to mid-2011.  *Id.*  The law does not require the jury to survey the public domain over a span of 8+ years to evaluate these subjective factors, and make findings on this sort of issue.  Nor has Jarrow identified a witness competent to testify to such matters.

Instead, the jury is only required to consider whether the subject information was "generally known or readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use" at the time of the misappropriation.  *See* KRS 365.880(4)(a).  The parties have already agreed on a stand-alone instruction on this point.  *See* Parties' Proposed Jury Instructions, DN 359, at p. 10.  Nothing further is warranted on the issue.

Not to be deterred, Jarrow cites *Structural Dynamics Research Corp. v. Eng'g Mechs. Research Corp.*, 401 F. Supp. 1102 (E.D. Mich. 1975) for the proposition that the jury must establish some kind of cutoff date as to Caudill Seed's trade secret damages – based on what information might have been available in the public domain at any/all points since mid-2011. Contrary to Jarrow, the Court in *Structural Dynamics* merely analyzed a reasonable royalty theory of damages, and found that "th[e] royalty is imposed for the period of time necessary for a competitor to duplicate the program by independent research rather than through the use of confidential information."  *Id.* at 1120.  The Court reasoned that such a limitation was reasonable under the reasonable royalty theory, because that value was based on the "value of the secret to the defendant."  *Id.* at 1119.  That inquiry is unique to a "reasonable royalty" theory of damages, which is not present in this case.

Indeed, Caudill Seed is not seeking a reasonable royalty award in this case.  Thus, the analysis of the Court in *Structural Dynamics* does not apply.  Put simply, Jarrow improperly

stretches the findings of *Structural Dynamics* to *all* trade secret damages theories.  That was not contemplated by the *Structural Dynamics* Court.  Nor has Jarrow offered any other trade secret case to support its onerous instruction to the jury, which is not required under Kentucky law.

Additionally, in *Structural Dynamics*, the defendant presented expert testimony in support if its time-period limitations.  *Id.* at 1120.  Here, Jarrow does not have an expert who can competently testify as to the "state of the industry" ever since Jarrow misappropriated Caudill Seed's trade secrets in mid-2011.  Jarrow has two purported experts: Kean Ashurst and Leslie West.  Neither of those individuals have opined on the "state of the industry" *after* 2011, or offered any expert report based on a survey of developments within the public domain after 2011.  Absent such expert testimony, Jarrow cannot present the jury with evidence to support its proposed instruction.

For these reasons, Caudill Seed requests that the Court reject this aspect of Jarrow's proposed instructions.

**B.  The Jury Should Not be Instructed to Disallow "Cost of Development" Damages if Caudill Seed "Retains the Use of an Alleged Trade Secret."**

Jarrow's proposed instructions would also prohibit any recovery for cost of development of a trade secret if Caudill Seed "retains the use of an alleged trade secret . . ."  *See* Exh. 2, p. 19.  Such a restriction would improperly limit Caudill Seed's damages claims absent any supporting law, or logic for that matter.  Caudill Seed is entitled to present its "research and development" expenses to the jury, without an instruction from the Court requiring jury consideration, and jury findings, as to whether Caudill Seed "retains the use of an alleged trade secret."  *See Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974) (. . . the plaintiff should be afforded every opportunity to prove damages once the misappropriation is shown.").  Common sense dictates that if a party misappropriates a trade secret, then a jury ought to be able

to fashion an award that requires the defendant to pay a sum to the plaintiff that resembles its "cost of development." It should make no difference if the plaintiff "retains use of its trade secret," if the misappropriating defendant (or another) has unfairly profited based on the investments and efforts expended by the plaintiff in developing its trade secret.

Jarrow, nevertheless, proposes an instruction that flies in the face of common sense. In doing so, Jarrow cites *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974), for the proposition that Caudill Seed is prohibited from recovering cost of development damages if it "retains use of its trade secret(s)." *See* Exh. 2, p. 19, n. 25. There is no such limitation under the KUTSA. Nor does the case offered by Jarrow have any application here. The *Univ. Computing* Court did not prohibit the recovery of cost of development damages under similar circumstances, and the language Jarrow references is pure dicta. To the contrary, the *Univ. Computing* Court explicitly upheld a jury instruction that allowed the jury to consider and award "the development costs incurred by plaintiff." *Id.* at 539.

Jarrow also cites *Applied Hydrogel Tech., Inc. v. Raymedica, Inc.*, a case in which the Court analyzed a *Daubert* motion. 2008 WL 5500756 (S.D. Cal. Oct. 7, 2008). The expert had offered a "reasonable royalty" opinion that was built upon the plaintiff's "cost of development" figures. The *Applied Hydrogel* Court held that this valuation theory did not pass muster under *Daubert*. At no point did the *Applied Hydrogel* Court rule upon the propriety of jury instructions, or the lost profit and research and development damage theories that Caudill Seed is pursuing here. Simply put, Jarrow's case citations have no applicability whatsoever.

### C. The Jury Should Not be Instructed that Caudill Seed's Research and Development Damages Must be "Apportioned" Amongst its Six Trade Secrets.

In its crusade to manufacture the maximum amount of hoops to jump through, Jarrow also claims that Caudill Seed must "apportion [its] cost of development damages" across each of

14

its six trade secrets. *See* Exh. 2 at pp. 20, 22. This ignores both the specific facts of this case and the black letter law to the contrary. *See BladeRoom Grp. Ltd. v. Facebook Inc.*, No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 577730 (N.D. Cal. Apr. 3, 2018). In *BladeRoom*, the Plaintiff was entitled to present evidence and the jury was entitled to award damages without apportioning damages amongst the trade secrets. *Id.* at *18-19.

By contrast, each case that Jarrow cites involves analysis of post-trial motions, and a determination of whether the plaintiff presented sufficient proof at trial to support the jury's award of damages. *See* Exh. 2 at p. 20 n. 16 *citing Tex. Adv. Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.*, 895, F.3d 1034 (Fed. Cir. 2018) (opinion modified on other grounds) (analyzing on appeal whether plaintiff's proof a trial supported the damages award); *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005) (analyzing defendant's motion for judgment as a matter of law to determine whether plaintiff's proof at trial was sufficient to substantiate its unjust enrichment damages for misappropriation of one of the trade secrets); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011) (analyzing a defendant's post-trial motion for judgment as a matter of law on conversion damages, not trade secrets); *Mgmt. & Eng'g Techs. Int'l, Inc. v. Info. Sys. Support, Inc.*, 490 Fed. Appx. 30 (9th Cir. 2012) (analyzing on appeal whether plaintiff's proof at trial supported the damages award).

The question before the Court concerns the appropriate jury instructions; not Jarrow's unsubstantiated claims about whether Caudill Seed has sufficient proof to prevail on its trade secret claims.

To be sure, none of Jarrow's cases are factually similar to the case at bar. Here, the compensatory damages are not readily apportionable amongst Caudill Seed's trade secrets,

because its trade secrets are inextricably intertwined into a single marketable product.  Therefore, Jarrow's misappropriation of any one of Caudill's trade secrets would have resulted in damage.

Put simply, Caudill Seed is entitled to present its damage claim to the jury, and is not required to acquiesce to a convoluted instruction that preemptively restricts its damage claims.[1]

### D. The Court Should Not Instruct the Jury to Consider Jarrow's Inadmissible Argument that Caudill Seed Would Have Conducted "Illegal Sales."

Jarrow also requests an instruction barring lost profits for "sales in violation of law."  *See* Exh. 2 at pp. 20-21.  This proposed instruction purports to require the jury to consider "whether [Caudill Seed's] sales would have been in violation of the law" because the product sold "would have been irradiated" or would have been sold as an "unregistered drug."  *Id.* at 20.  This Court has already excluded evidence of or argument about Jarrow's failed counterclaims and the FDA warning letter.

"The purpose of jury instructions is to afford the jury a clear and succinct statement of *the law applicable to the facts of the case.*"  *Young v. Sears Roebuck & Co.*, 2007 WL 2068626 at *4 (E.D. Ky, July 17, 2007) *citing Moore's Federal Practice*, § 51.20[1][a] (3d ed. 2002 & Supp. 2007) (emphasis added).  Further, the jury instructions should "adequately inform the jury of the *relevant considerations* and provide the jury with a sound basis in law with which to reach a conclusion."  *Troyer v. T. John E. Productions, Inc.*, 526 Fed. App'x 522, 525 (6th Cir. 2013) (emphasis added).  Inclusion of Jarrow's requested instructions would provide the jury with irrelevant material, which would merely serve to confuse the jury and leave them with a more difficult task.

---

[1] If the Court permits any sort of instruction on this point, Caudill Seed requests that it implement permissive language, as opposed to the mandatory language that Jarrow proposes.  For example, Jarrow's proposed instruction states that the jury "must" apportion damages; not that it "may" apportion damages.  *See* Exh. 2 at p. 20.  There is no legal authority, under the KUTSA or otherwise, that requires a jury to apportion a recovery of research and development costs across various trade secrets that are inextricably intertwined (and overlapping, in several instances).

16

Indeed, this Court has already ruled that Jarrow's failed counterclaims, regarding alleged irradiated seed sales, are inadmissible at trial. *See* March 29, 2019 Memorandum Opinion and Order (DN 341 at p. 3). In doing so, the Court rejected Jarrow's argument that the alleged irradiation was somehow relevant to Caudill Seed's damage claims. *See* Jarrow Formulas' Response in Opposition to Caudill Seed's Omnibus Motion *in Limine* (DN 312 at p. 10) ("Caudill's irradiation of its products in violation of federal law is highly relevant to its claims for lost profits damages . . . If the jury credits this evidence, Caudill cannot be awarded lost profits damages based on such alleged lost sales.").

In rejecting Jarrow's argument, the Court also ruled:

> This issue is completely unrelated to Caudill's claims or damages, as the alleged irradiation occurred prior to the alleged misappropriation. It is thus disconnected from the time period for which Caudill claims lost profits and unjust enrichment.

DN 341 at p. 3.

Likewise, this Court rejected Jarrow's argument that a warning letter from the Food and Drug Administration ("FDA") is relevant to Caudill Seed's damages claims because it "established that . . . any sales would have been illegal." (DN 312 at p. 22). The Court again found that "[t]he FDA letter is completely unrelated to Caudill's claims or damages . . ." and that "it is [] disconnected from the time period for which Caudill claims lost profit and unjust enrichment." (DN 341 at p. 5).

Because the Court has excluded any evidence of or argument about alleged irradiation and "unregistered drugs," an instruction on this issue would be erroneous. The jury should not be tasked with answering questions about which it was provided no admissible evidence. Accordingly, Caudill Seed requests that the Court reject Jarrow's proposed damage instruction on so-called "illegal sales."

17

**E.  The Jury Should Not Be Instructed that Caudill Seed's Damages Are Limited To Lost Profits _Or_ Its Research and Development Costs.**

Jarrow next requests that the Court instruct the jury that "Caudill Seed is not permitted to recover both cost of development and lost profits damages."  *See* Exh. 2 at p. 21.  This is an inaccurate statement of the law.  Indeed, the governing statute does not preclude recovery on different theories.  *See* KRS 365.884.  Rather, the plain language of the statute expressly contemplates recovery on multiple damages theories, with the mere restriction that such theories do not "overlap."  *Id.* ("Damages may include *both* actual loss caused by misappropriation *and* the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." (emphasis added)).  To prevent any such "overlap" Caudill Seed has proposed a jury instruction explaining this limitation.  *See* Exh. 1 at p. 19.

Moreover, in requesting an instruction on this point, Jarrow erroneously relied upon *Salsbury Labs v. Merieux Labs*, for the proposition that Caudill Seed cannot recover both cost of development and lost profit damages.  735 F.Supp. 1555, 1580 (M.D. Ga. 1989).  Contrary to Jarrow, the *Salsbury* Court expressly permitted the plaintiff in a trade secrets case to recover on several different damage theories, including:

- $207,000 in lost profits;
- $104,165 for "price erosion;"
- $750,000 for the wrongful use of its research and development advances; and
- $250,000 for the wrongful use of its advertising and marketing strategies.

*Id.* at 1574.

Plainly, the *Salsbury* decision supports the propriety of Caudill Seed's ability to recoup both lost profits and the money it spent on research and development.  So does KRS 365.884, for that matter.  It would be plain error to adopt Jarrow's damage instruction to the contrary.

18

**F.    The Jury Should Not Be Required To Evaluate and Make Findings As To The Extent Caudill Seed's Trade Secrets Played A Role in the "Commercial Success" of Products Sold by Jarrow.**

In its proposed instruction on "unjust enrichment," Jarrow would also have the jury render conclusions as to the "value or contribution made by the misappropriated features within a multi-component product" and therein determine the role that Caudill Seed's trade secrets "played in the commercial success" of products sold by Jarrow. *See* Exh. 2 at p. 22. Jarrow attempts to support this request by citing to *KW Plastics v. U.S. Can. Co.*, 131 F. Supp. 2d 1289 (M.D. Ala. 2001) for the proposition that the jury must apportion unjust enrichment damages. Jarrow misrepresents the holding of *KW Plastics*.

In the *KW Plastics* case, the Court analyzed a *Daubert* motion seeking to exclude the unjust enrichment and lost profit opinions of Plaintiff's damages expert in a trade secrets case. In granting the *Daubert* motion, the Court did not consider whether the expert (or jury) was required to apportion damages in the manner that Jarrow claims. Rather, the Court found that the expert's calculations were based on "guesses" and lacked foundation. Moreover, the Court excluded the expert's opinions due to his "failure to give more than fleeting thought to numerous matters that are relevant to a [damages report] . . ." Put simply, the *KW Plastics* Court did not even consider apportionment, let alone mandate apportionment.

In support of this request, Jarrow also cites *Softel, Inc. v. Dragon Med. & Scientific Commc'ns Ltd.*, 891 F. Supp. 935 (S.D.N.Y. 1995) to claim that "unjust enrichment damages *must* be confined or apportioned . . ." *See* Exh. 2 at p. 22, n. 39 (emphasis added). But the *Softel* Court merely stated that it may be "*appropriate* to apportion damages . . ." *Softel, Inc.*, 891 F. Supp. 935 at 943. At best, this would permit the jury to determine whether it is appropriate to apportion the damages; it does not *require* that the jury do so, as Jarrow asserts.

19

*****

Rather than accept Jarrow's invitation to invent new law, the Court should permit the jury to fashion an appropriate remedy after considering all of the evidence and closing arguments of counsel.  Thus, on each of these points, Caudill Seed requests that the Court reject Jarrow's proposed damage instruction.  The bare bones approach required under Kentucky law should be the polestar in analyzing the competing instructions.  Plainly, Caudill Seed's instructions hew to that approach.

## IV. JARROW'S PROPOSED INSTRUCTIONS IMPROPERLY ASK THE JURY TO APPORTION FAULT TO KEAN ASHURST.

Jarrow's proposal instructions also include: (1) an instruction inviting the jury to allocate fault to Kean Ashurst in the event they find for Caudill Seed on liability; and (2) a verdict form wherein the jury may allocate fault for misappropriating Caudill Seed's trade secrets to Kean Ashurst, thereby diminishing the percentage fault of Jarrow (collectively the "Apportionment Proposals").  These Apportionment Proposals run afoul of this Court's prior rulings and well-settled law.

Indeed, the Apportionment Proposals violate Kentucky law for at least three reasons: (1) the plain language of Kentucky's fault allocation statute, KRS 411.182, does not allow apportionment of fault for statutory or joint enterprise claims, like Caudill Seed's KUTSA claim; (2) Ashurst is a non-settling non-party, and Jarrow failed to name Ashurst as a third-party defendant and seek contribution or indemnity in this action; and (3) Jarrow should be judicially estopped from seeking to allocate fault to its own expert in this case.

### A. An Apportionment Instruction Conflicts with this Court's Prior Rulings.

First, the Apportionment Proposals intrinsically conflict with the Court's prior rulings that Jarrow is not liable based solely on Ashurst's acts as its agent, absent some wrongdoing by

20

Jarrow.  With respect to liability in this case, the jury will be asked to find if Jarrow committed

independent wrongdoing under the KUTSA.  It defies reason to permit the jury to apportion fault

that is properly attributable to Jarrow, back over to Ashurst.  This is especially true after the jury

will be prohibited from considering conduct by Ashurst that is not attributable to Jarrow, under a

vicarious liability theory.  Thus, to include such an apportion instruction would be inherently

contradictory and confusing for the jury.

Moreover, it would be unduly prejudicial and improper to preclude Caudill Seed from

imputing Ashurst's liability to Jarrow, but then permit Jarrow to try and impute liability to

Ashurst.[2]

### B.    KRS 411.182 Does Not Permit Apportionment of Fault for Statutory Claims, or Harm Caused Through A Joint Enterprise/Adventure.

In Kentucky, allocation of fault is governed by KRS 411.182, which begins: "In all *tort*

*actions*. . [the court may, in certain situations, instruct the jury on apportionment]." (emphasis

added).  Under Kentucky law, statutory claims are not considered "tort actions" for the purposes

of KRS 411.182 and, therefore, the apportionment statute is not applicable.  *See Doe v.*

*Williamsburg Ind. Sch. Dist.*, 2016 WL 1735850 (E.D. Ky. May 2, 2016) (analyzing statutory

claims under KRS 345.555 *et seq*. and KRS 466.070 *et seq.*, among others, and holding that KRS

411.182 does not permit apportionment of fault on statutory claims).

In analyzing the issue, the Eastern District of Kentucky, applying Kentucky law, stated:

> [KRS 411.182] pertains to the allocation of fault in *tort actions*,
> and the majority of the Plaintiff's claims do not sound in tort. The
> first three claims are constitutional or statutory claims outside the
> stated scope of KRS 411.182.

---

[2] If an apportion instruction is permitted here, then the Court ought not instruct the jury that Caudill Seed's route to recovery against Jarrow is limited by any principles of res judicata or vicarious liability.  Indeed, if Jarrow opens the door to a contribution claim against Ashurst, then what is good for the goose is good for the gander.

20114368.3

*Id.* at *3 (emphasis added).  The Court also found that, because KRS 411.182 does not apply, the statutory claim must provide its own vehicle for apportionment for defendants to be granted an apportionment instruction.  *Id.* (denying an apportionment instruction for statutory claims where the relevant statute did not provide for a right to indemnity or contribution).

Here, Caudill Seed's claim is a statutory claim under KRS 365.880 *et seq.*, the Kentucky Uniform Trade Secrets Act.  Thus, by its plain language, Kentucky's allocation of fault statute is not applicable, and Jarrow is not entitled to an apportionment instruction.  Additionally, the KUTSA does not provide for any right to apportionment and, therefore, Jarrow is not entitled to an apportionment instruction under it either.

Further, the Kentucky Supreme Court has held that a claim "sounding in tort" is insufficient for the purposes of allocating fault under KRS 411.182.  *See Ky. Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797 (Ky. 2005) (analyzing an underinsured motorist claim with an underlying negligence action and finding that the defendant was not entitled to an apportionment instruction despite the fact that the insurance claim may be considered to "sound in tort").

The Kentucky Supreme Court stated:

> By its plain language, KRS 411.182 limits itself to tort actions. An unambiguous statute is to be applied without resort to any outside aids. This Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required.

*Id.* at 800 (internal citations omitted). Thus, the language of KRS 411.182 is to be strictly construed, and it does not authorize allocation of fault in connection with a KUTSA statutory claim.

Alternatively, and even if the Court considered Caudill Seed's claims to sound in tort, Kentucky law still does not permit the apportionment of fault between joint actors who commit a

single injury by an intentional tort.  In *Steelvest v. Scansteel Serv. Ctr.*, for example, the plaintiff sued former employees for breach of their fiduciary duties and sued various professionals who aided and abetted the breach. 807 S.W.2d 476 (Ky. 1991).  The Court explicitly ruled that judgment would be joint and several between them:

> As to the claim of aiding and abetting, it has been held that a person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue. *Jackson v. Smith*, 245 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418 (1921); *Irving Trust Co. v. Deutsch*, 73 F.2d 121 (2nd Cir. 1934); *Miller v. Steinbach*, 268 F. Supp. 255 (S.D.N.Y. 1967); *Lappas v. Barker*, Ky., 375 S.W.2d 348 (1964); *Fink v. Weisman*, 129 Cal. App. 305, 18 P.2d 961 (1933); *Lonsdale v. Speyer*, 249 A.D. 133, 291 N.Y.S. 495 (1936); *Ozark Motor Co. v. Horton*, Mo. App., 196 S.W. 395 (1917); and *Raines v. Toney*, *supra*.

*Id.* at 485.

*Steelvest* merely followed the general rule that apportionment is not permitted where joint actors commit a single injury by an intentional tort.  *Abbott v. Chesley*, 413 S.W.3d 589, 596, 603-04 (Ky. 2013) ("[T]he imposition of joint and several liability against CGM was proper."). Kentucky's Court of Appeals recently reaffirmed that the passage of the comparative fault statute did not eliminate joint and several liability for defendants that act together "in a joint enterprise or joint adventure." *See Hayes v. Goldsmith*, 2016 WL 4256910, *9 (Ky. Ct. App. Aug. 12, 2016).

Here, there can be no dispute that Ashurst and Jarrow were involved in a joint enterprise to commit a single harm to Caudill Seed.  Thus, once again, the jury should not be instructed to apportion fault between them.

### C.    Fault Also Cannot be Apportioned to Ashurst Because He is a Non-Settling Non-Party.

Even if KRS 411.182 applied to statutory KUTSA claims, it does not permit a defendant to apportion fault to "the world at large." *Baker v. Webb*, 863 S.W.2d 898, 900 (Ky. App. 1994). Rather, "section 411.182 apportionment encompasses named parties including third-party defendants and parties dismissed for whatever reason, and settling parties or settling nonparties." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 824 (6th Cir. 2000). Thus, under Kentucky law, a defendant is <u>not</u> permitted to apportion fault to a non-settling, non-party. *Jones v. Stern*, 168 S.W.3d 419 (Ky. Ct. App. 2005) ("The Kentucky case law interpreting and applying section 411.182 uniformly rejects the inclusion of nonsettling nonparties in the jury's apportionment instructions."). Ashurst is, at best, a non-settling non-party. And because he was never joined as a party on a contribution or indemnity claim by Jarrow, there can be no apportionment under the foregoing authorities.

### 1.    Ashurst is a Non-Party.

Kentucky's allocation of fault statute does not permit apportionment to certain non-parties. To be considered a non-party, the individual (or entity) in question must never have been a party to the action. *Barnes*, 201 F.3d at 815 ("[T]he thrust of KRS 411.182, considered in its entirety, limits allocation of fault to those who actively assert claims, offensively or defensively, as parties in the litigation . . .") (applying Kentucky law). Here, it is undisputed that Ashurst has never been a party to this action. Thus, for Jarrow to have any colorable argument of apportioning fault to Ashurst, it would have needed to assert a third-party claim against Ashurst, which it did not do. *Baker*, 883 S.W.2d at 899 (if a defendant fails to file a third-party complaint, they are not permitted to apportion fault because the individual is considered a nonparty).

24

##### 2.   Ashurst did not settle with Caudill Seed.

Settling parties include "parties who have settled or otherwise 'bought their peace' by an agreement described in subsection 4 [of KRS 411.182]." *Barnes*, 201 F.3d at 823.  Such agreements include: "A release, a covenant not to use, or similar agreement entered into by a claimant and a person liable . . ." KRS 411.182(4).  As Jarrow has previously argued, Ashurst did not settle his claims with Caudill.  *See* Jarrow's Response in Opposition to Plaintiff's Omnibus Motion *in Limine* [DN 312] at p. 13 ("Caudill dismissed its trade secret misappropriation claims against Ashurst and received nothing in return.  The parties did not 'settle' their claims.").

On this point, Jarrow is correct; the voluntary dismissal of the claims against Ashurst operates as an adjudication on the merits, not a settlement.  *See* Memorandum Opinion and Order [DN 89] at pp. 10-11 ("[T]he voluntary dismissal of the KUTSA claim with prejudice was a final resolution of the prior action on the merits.").  And under Kentucky law, courts cannot grant an apportionment instruction that may impose liability on a party who had claims against it dismissed on the merits.  *Barnes*, 201 F.3d at 826 ("If a third-party defendant were dismissed before trial *on the grounds that it could not be held legally liable to the plaintiffs* for their injuries, apportionment of fault to that third-party defendant would be inappropriate." (emphasis original)).  *See also Sadler v. Advanced Bionics, LLC*, 2013 WL 1636374, *1 (W.D. Ky. Apr. 16, 2013) ("Kentucky law prohibits an apportionment jury instruction where the Court dismissed the nonparty on the merits.").

Put simply, it is indisputable that Ashurst is a non-party and Caudill Seed and Kean Ashurst did not "settle" their claims, as would be required to instruct the jury to apportion fault to Ashurst.  Accordingly, the Court should decline to instruct the jury on apportionment.

20114368.3

**D.      Jarrow Should be Judicially Estopped from Seeking Apportionment Against its Expert, Ashurst.**

In seeking to apportion fault to Ashurst, Jarrow makes an incredible assertion that it should be able to apportion fault to its own non-party expert witness.  Jarrow has purported to designate Kean Ashurst as an expert, and has argued – successfully – that Ashurst is sufficiently disinterested in this litigation to remain as an expert.  *See* Jarrow's Response to Plaintiff's Motion to Exclude Expert Testimony and Reports of Leslie West and Kean Ashurst [DN 309] at pp. 17-20.  Ashurst may hardly be deemed "disinterested" if Jarrow seeks to impose fault against him.  Indeed, Ashurst would have every motivation to exonerate himself and, in the process, Jarrow from any wrongdoing.  In addition to the other reasons cited herein, Jarrow is speaking out both sides of its mouth and its argument to impose fault against Ashurst – its own expert – is barred by any notion of common sense and the doctrine of judicial estoppel. *See Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (the doctrine of judicial estoppel protects the courts "from the perversion of judicial machinery.").

Judicial estoppel "is intended to protect the integrity of the judicial process" and is not subject to hard-and-fast rules.  *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982); *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  With that said, courts consider factors including (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, such that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Id.* at 750—51.  Or, put more simply, courts consider whether the party is attempting to "have its cake and eat it too."  *Browning*, 283 F.3d at 776.

26

Here, Jarrow has consistently maintained that it, and Ashurst, are free of fault.  As well, Jarrow has persuaded the Court that Ashurst is entitled to offer "expert" opinion testimony at trial.  Surely it is inconsistent for Jarrow to now maintain that the jury should apportion fault to Ashurst, based on the very subjects and conduct that Jarrow will elicit "expert" testimony from Ashurst on during trial.  If there ever was a perversion of the judicial machinery, it occurs when a defendant asks the jury to consider whether its ostensible "expert" should be held responsible instead of the defendant.  The Court should not permit Jarrow to "have its cake and eat it too."

*****

Each of these reasons, standing alone or taken together, is grounds for the Court to deny Jarrow's demand for an instruction to allow apportionment of fault to its expert.

## V.      JURY INTERROGATORY AND VERDICT FORMS.

Caudill Seed has submitted jury instructions containing five (5) comprehensive, but straightforward interrogatories asking the jury to determine trade secret status, misappropriation, damages, and willful and malicious conduct.

Conversely, Jarrow has proposed a convoluted set of verdict forms, demanding that the jury answer 67 separate interrogatories.  Jarrow's elaborate interrogatories would require the jury to muddle through 11 interrogatories for each of Caudill Seed's six (6) claimed trade secrets; a daunting task that no jury should be asked to perform.  *Ball*, 801 S.W.2d at 691 (rejecting proposed instructions that were 47 pages long and contained 41 "jury charges" as "both unsuitable and unreasonable.").

Indeed, Jarrow's complex approach defies Kentucky law, which follows a "bare bones" approach to jury instructions.  *King*, 209 F.3d at 897 ("Kentucky follows the 'bare-bones' principle in providing instructions.  That is, the jury instructions should not contain an abundance of detail, but should only the bare bones of the question for jury determination.")

27

Nor has Jarrow offered any legal authority for its demand that the jury should make specific findings, on a trade secret by trade secret basis, for each and every purported "element" of Caudill Seed's claims, including several that have no statutory basis whatsoever.  *See e.g.*, Exh. 2 at p. 30 (proposing that the jury render specific findings whether Jarrow was involved in "independent" acts of acquisition, disclosure or use).  Instead of conforming to Kentucky law, Jarrow's proposed verdict forms also compound the legal errors found within its proposed instructions.  *See e.g.,* Exh. 2 at p. 30 (purporting to limit Caudill Seed's damage claims to *either* "cost of development" or "lost profits."); *id.* at p. 31 (purporting to require the jury to apportion fault between Kean Ashurst and Jarrow).

Put simply, Caudill Seed's proposed verdict forms and jury interrogatories plainly conform to Kentucky law, and follow this Court's approach in *Babcock Power*.  Accordingly, Caudill Seed respectfully requests that the Court utilize its proposed verdict forms and jury interrogatories for trial.

## <u>CONCLUSION</u>

For the foregoing reasons, Caudill Seed respectfully requests that the Court adopt its proposed jury instructions and verdict forms, and reject those proposed by Defendant Jarrow Formulas.

For convenience, Caudill Seed has also attached a "redlined" version of the competing instructions and verdict forms, which reflects the language Jarrow has demanded stricken, and that Jarrow has insisted be added over top of the Caudill Seed instructions.  The redlined version is attached as Exhibit 4.

Respectfully submitted,

*/s/ Benjamin J. Lewis*
J. Mark Grundy
Jared A. Cox
Benjamin J. Lewis
Amanda L. Dohn
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 589-4200
Fax: (502) 587-3695
E-mail: jgrundy@bgdlegal.com
          jcox@bgdlegal.com
          blewis@bgdlegal.com
          adohn@bgdlegal.com

COUNSEL FOR PLAINTIFF
CAUDILL SEED AND WAREHOUSE
COMPANY, INC.

## CERTIFICATE OF SERVICE

It is hereby certified that on the 14th day of May, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record through the ECF system.

*/s/ Benjamin J. Lewis*
COUNSEL FOR PLAINTIFF