UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:13-CV-82-CRS-CHL

CAUDILL SEED AND WAREHOUSE COMPANY, INC.,         **Plaintiff,**

**v.**

JARROW FORMULAS, INC,         **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion to quash (DN 513) and motion for sanctions (DN 514) filed by Plaintiff Caudill Seed and Warehouse Company, Inc. ("Caudill").  Defendant Jarrow Formulas, Inc. ("Jarrow") filed a response to the motion to quash (DN 518) and a response to the motion for sanctions (DN 517) to which Plaintiff filed respective replies (DN 519, 520).  Therefore, the motion is ripe for review.

For the reasons set forth below, Plaintiff's motion to quash (DN 513) is **GRANTED**, and Plaintiff's motion for sanctions is **DENIED**.

### I.    BACKGROUND

This action, alleging violation of the Kentucky Uniform Trade Secrets Act ("KUTSA"), KRS 365.880, *et seq.*, was tried by a jury over a three and a half week period and resulted in a verdict in favor of Caudill, a damage award totaling $2,427.605.00, and a finding of willful and malicious misappropriation by Jarrow.

On July 22, 2019, Jarrow's former counsel, McCarter & English, LLP ("M&E") filed suit against Jarrow in the United States District Court for the District of Connecticut in a case captioned *McCarter & English, LLP v. Jarrow Formulas, Inc.*, No. 3:19-cv-1124-MPS (D. Conn. filed July 22, 2019) (the "Connecticut Action").  In the Connecticut Action, Jarrow's former counsel seeks

to collect outstanding legal fees relating to its representation of Jarrow in this action.  Jarrow has pleaded defenses and counterclaims, including claims for overbilling, legal malpractice, misrepresentation, breach of fiduciary duty and unfair trade practices in violation of Connecticut state law.  In the Connecticut Action, Jarrow specifically alleges that its former counsel failed to provide adequate representation to Jarrow in this case.

On March 10, 2020, Jarrow served on Caudill a subpoena in the Connecticut Action, seeking to depose a representative of Caudill and the production of "[a]ll documents which concern, relate to or support Caudill's claim for damages" in this action.  (DN 513-1, at PageID# 25585.)  In order to address the motion, the Court must briefly review some procedural history regarding document disclosure in this case, which was aptly described by Senior United States District Judge Simpson almost two years ago as "the unending saga of sealed documents."  (DN 281 at 1.)

### a.  The Agreed Protective Order (DN 33)

At the outset of this action, on December 30, 2013, the Court entered the Parties' agreed protective order, which governs the use of certain sensitive information subject to discovery or otherwise submitted to the Court through the course of litigation.  (DN 33.)  Under the agreed protective order, the Parties were permitted without limitation to designate certain sensitive documents as confidential; any such documents are protected from disclosure or use in any way outside this action.[1]  (*Id.*, at PageID# 297-98.)  The order also provides a process for objecting to a Party's designations, whereby the objecting party must timely notify the other party of the objection and has the burden to confer with the other party in an attempt to resolve the dispute. (*Id.*, at PageID# 299.)  If the Parties are unable to reach an agreement, the agreed protective

---

[1] The order also allowed use of documents subject to the protective order in a then-pending action in Jefferson Circuit Court which has since been dismissed.

order then requires the objecting Party to file a motion requesting a determination by the Court whether the disclosure is covered by the agreed protective order.  (*Id.*)  Supplementations or alterations to the agreed protective order are permitted "only by written stipulation filed with, and approved by, the Court, or by Court order."  (*Id.*, at PageID# 307.)

Following the initiation of the Connecticut action, on August 31, 2019, Jarrow moved to amend the protective order to allow use of documents subject to the protective order in the Connecticut Action.  (DN 490.)  The Court denied the motion because it found the documents Jarrow sought were not relevant to M&E's claim for legal fees and, "though Jarrow had represented that it planned to assert a legal malpractice claim to the Connecticut Court, there was as of yet no formal claim filed nor any description of why the protected materials in this action would be necessary to prosecute the same."  (DN 497, at PageID# 22117-18.)  The Court further ordered that any later motion to amend the agreed protective order shall be treated as a discovery dispute, requiring the parties to meet and confer and participate in a telephonic status conference with the Court prior to any motions practice.  (*Id.*, at PageID# 22118.)  To date, Jarrow has made no subsequent attempt to amend the agreed protective order.

### b.  The Court's Provisional Sealing Orders (DN 488, 504)

At the close of trial, Plaintiff gave notice of its intent to seek redaction of trade secret-protected material.  In relevant part, the following exchange took place:

> MR. LEWIS [Counsel for Caudill]: For the sake of efficiency, I have
> an inquiry. We've got some exhibits that were admitted that have
> sensitive financial information, as well as some information that we
> believe still constitutes, you know, secretive formulas. We'd like to
> keep some items under seal.

> THE COURT: Well, the exhibits -- Dena, don't you normally keep
>
> those as the court reporter?
>
> THE REPORTER: Yes, sir.
>
> THE COURT: All right. Well, we'll just indicate that nobody will
>
> have access to those except with court permission. Okay? Except
>
> counsel in this case. Okay?
>
> MR. LEWIS: Okay.
>
> THE COURT: So anybody else wants to get it will have to get court
>
> permission. [The Court Reporter] will have to ask me if somebody
>
> wants to look at it. Okay? That way it's still confidential.

(DN 488, at PageID# 21855-56.)  On July 29, 2019, the Parties participated in a telephonic status

conference during which the process for redacting trial transcripts was discussed.  (*See* DN 498.)

Based on those discussions, the Court instructed the Parties to work with one another to submit a

proposed redacted trial transcript and that any unresolved disputes regarding redactions could then

be submitted to the Court.  (*Id.*, at PageID# 22142-43.)

Although Jarrow did not object to a partial seal of the trial transcripts during the June 26,

2019 close of trial exchange nor during the July 29, 2019 telephonic status conference, on

September 18, 2019, Jarrow notified Caudill that it would not consent to any of Caudill's proposed

redactions because of Jarrow's position that Caudill's request for seal was untimely and that

Caudill waived the opportunity to maintain confidentiality by failing to seek to have the courtroom

closed during the trial.  (DN 500-1.)  Consequently, on September 24, 2019, Caudill filed a motion

to seal the transcripts, submitting with it its proposed redacted trial transcript.  (DN 500.)  On

September 26, 2019, the Court issued an order noting that Caudill's motion to seal was not ripe

for review and finding that the transcripts should be maintained under seal pending full briefing by the parties and a ruling on Caudill's motion.  (DN 504.)  Accordingly, the Court ordered "**that the Clerk of Court shall restrict access to all trial transcripts in the above-styled case, permitting access by the Court and counsel of record only, pending further order of this Court.**" (*Id.*, at PageID# 25159.)

### c.  Efforts to Secure Sealing Order in Connecticut Action

On September 29, 2019, a prejudgment relief hearing was held in the Connecticut Action. During that hearing, M&E entered into evidence certain documents produced by Caudill in this action that were designated confidential subject to the terms of the agreed protective order.  (DN 514, at PageID# 25610.)  Those documents were also entered as trial exhibits in this case and were thus subject to the Court's provisional sealing orders.  (*See* DN 488, 504.)  After learning of M&E's inadvertent disclosure, Caudill conferred with M&E and Jarrow in an attempt to file an agreed protective order covering the disclosed documents in the Connecticut Action.  (DN 514-1.)  When Jarrow declined to join an agreed protective order, on January 23, 2020, M&E filed a motion to seal the documents on grounds that "the Court in the Kentucky Action entered an Order sealing all trial exhibits containing protectable trade secret information."  (Connecticut Action DN 114.)  M&E's motion referenced the Court's oral sealing order (DN 488), but it did not quote the order or attach as an exhibit that portion of the trial exhibit, nor did it make any reference to the Court's renewed temporary sealing order at DN 504.  (*See Id.*)

On January 30, 2020, Jarrow filed a response opposing the motion, arguing that this Court did not issue any order sealing the documents and that the documents at issue were not entitled to a sealing order.  (Connecticut Action DN 116.)  On January 31, 2020, the Court in the Connecticut Action issued a text order denying without prejudice M&E's motion to seal because

M&E did not "provide[] the Court with a copy of any sealing order, either in the form of a written order or an oral order reflected in a minute entry or on a printed transcript." (Connecticut Action DN 117.) The Court further ordered that "[i]f the Kentucky Court issues a sealing order, or such an order was previously issued but not provided to this Court, a renewed motion may be filed providing the order for this Court's consideration." (*Id.*)

On March 19, 2020, M&E filed a renewed motion to seal the documents disclosed in the Connecticut Action, this time attaching the relevant orders by this Court. (Connecticut Action DN 128, 129.) On April 16, 2020, Jarrow filed a response. (Connecticut Action DN 146.) On April 30, 2020, M&E filed a reply to Jarrow's response. (Connecticut Action DN 150.) To date, no ruling has been issued on M&E's renewed motion to seal.

### d. The Court's Sealing Order (DN 521)

On May 31, 2020, after Caudill's motions at DN 513 and DN 514 and M&E's related motion to seal in the Connecticut action were fully briefed, this Court issued an order granting Caudill's motion to partially seal the trial transcripts and adopting Caudill's proposed redacted trial transcripts. In its order, the Court rejected Jarrow's claim that Caudill's redaction request was untimely, noting that Caudill gave notice of its request at close of trial and submitted its proposed redactions in compliance with the Court's instructions. (DN 521, at PageID# 25803.) In response to Jarrow's argument that Caudill waived protection by disclosing the information at issue in open court, the Court pointed to the abundant case law providing an overriding interest in protecting trade secrets and concluded that, "[w]hile we are conscious of the importance the right of public access to trials, a theoretical dissemination to the public admittedly not in attendance is not a valid basis to deny Caudill Seed's motion in this case." (*Id.*, at PageID# 25804-06.)

### II.     LEGAL STANDARD

The Court sets forth below the law governing Caudill's motion to quash (DN 513) and motion for sanctions (514).

### a. Motion to Quash

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope of discovery. Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). However, either on motion or on its own, the Court must limit discovery that is unreasonably cumulative or duplicative; that can be obtained from another "more convenient, less burdensome, or less expensive" source; that the seeking party has had ample opportunity to obtain; or that is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Rule 45 of the Federal Rules of Civil Procedure allows parties, *inter alia*, to command a nonparty to appear at a certain time and place to testify or produce documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275

F.R.D. 251, 253 (S.D. Ohio 2011). "The party seeking to quash a subpoena bears the ultimate burden of proof." *Id.* at 253.

### b. Motion for Sanctions

Under Supreme Court and Sixth Circuit precedent, a district court has "the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003) (citing *Chambers v. Nasco*, 501 U.S. 32, 43-50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides in relevant part that "[i]f a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). For example, the Court may "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). However, "violation of a definite and specific court order must be shown by clear and convincing evidence before sanctions can be imposed for violation of the order." *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1243 (6th Cir. 1996). This means that "[t]he order must be 'clear and unambiguous' . . . and ambiguities must be resolved in favor of persons charged . . . ." (*Id.*)

### III.   DISCUSSION

As set forth below, the Court finds sufficient grounds to grant Caudill's motion to quash and insufficient grounds to grant Caudill's motion for sanctions.

### a. Motion to Quash

Caudill's motion to quash cites various alleged procedural and substantive defects in Jarrow's subpoena.  (DN 513.)  In its response, Jarrow addresses Caudill's arguments and further requests that Caudill's motion be transferred to the issuing court in the District of Connecticut. (DN 518.)  The Court addresses both issues below.

### i.  Jarrow's Request for Transfer

As an initial matter, the Court must address Jarrow's request to transfer Caudill's motion to quash to the issuing court in the Connecticut Action.  (*See* DN 518, at PageID# 25719-20.) Rule 45(f) of the Federal Rules of Civil Procedure provides that, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  Jarrow offers as evidence of "exceptional circumstances" justifying a transfer "the scheduling order in the Connecticut Action requires all depositions to occur by the middle of June[, 2020]."  In response, Caudill argues that discovery deadlines in the Connecticut Action are insufficient to justify a transfer and that the motion is properly before this Court.  (DN 219, at PageID# 25760.)

Transfer is not favored, and "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas."  Advisory Committee Notes to the 2013 Amendment, Fed. R. Civ. P. Rule 45(f).  Nor should a court considering transfer assume that "the issuing court is in a superior position to resolve subpoena-related motions."  *Id.*  Exceptional circumstances contemplated by the rule include "when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."  *Id.*  It is the burden of the proponent of transfer to demonstrate that these exceptional circumstances exist.  *Id.* Jarrow has failed to carry its burden here.

Caudill, a local nonparty to the Connecticut Action, opposes the transfer, which would require it to litigate Jarrow's subpoena in Connecticut, subjecting it to additional travel, expense, preparation, and time.  This Court can rule on Caudill's motion without disrupting the Connecticut court's management of the underlying litigation, seeing as the requested information derives exclusively from the action in this Court.  Indeed, it would be a great inconvenience to impose upon the Connecticut court the job of familiarizing itself with seven years of discovery disputes in this case preceding Jarrow's subpoena.  Finally, Jarrow has made no showing that the Connecticut court has already ruled on a similar issue, or that it is likely to arise in other districts in this litigation.  In sum, because no exceptional circumstances exist that warrant transfer, the Court declines Jarrow's invitation to do so.

### ii.  Rule 26(b)

The Court will first assess whether the subpoena is proper under Rule 26(b) of the Federal Rules of Civil Procedure.  Beginning with the relevancy requirement, the Court previously denied Jarrow's request to use documents produced in this action in the Connecticut Action because the Court found that the documents were not relevant to M&E's claim for legal fees and, "though Jarrow had represented that it planned to assert a legal malpractice claim to the Connecticut Court, there was as of yet no formal claim filed nor any description of why the protected materials in this action would be necessary to prosecute the same."  (DN 497, at PageID# 22117-18.)  However, Jarrow has since plead its legal malpractice counterclaims in the Connecticut Action.  In its response to Caudill's motion to quash, Jarrow argues that the documents it requests are relevant to show that the jury award in this case was unfounded, "and, if McCarter & English had met their standard of care, the jury would not have rendered a verdict awarding Caudill 100% of all its research and development expenditures for many years."  (DN

518, at PageID# 25713-14.)  Caudill does not dispute the relevance of the requested documents to Jarrow's claims in the Connecticut Action.  (DN 513, at PageID# 25574.)  The Court finds that the information Jarrow seeks bears on matters at issue in the Connecticut Action and is therefore relevant for discovery purposes.

Because Jarrow has established relevancy, the burden shifts to Caudill to establish grounds to limit the discovery Jarrow seeks.  *See Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).  In its motion to quash, Caudill argues Jarrow "has the information necessary to substantiate its malpractice claim" and that "Jarrow should be seeking this Court's permission to use the information it already has not subpoenaing Caudill for duplicative information . . . ."  (DN 513, at Page ID# 25573-74.)  Although not specifically cited in its motion, the Court finds that Caudill established grounds to quash the subpoena under Rule 26(b)(2)(C).

Rule 26(b)(2)(c) requires the Court to limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Here, Jarrow's request meets that definition. In the subpoena, Jarrow seeks to depose a representative of Caudill regarding "Caudill's claim for damages [in this case] and the documents and evidence supporting such claims."  Jarrow also seeks production of "[a]ll documents which concern, relate to or support Caudill's claim for damages" in this action.  (DN 513-1, at PageID# 25585.)  This information has already been abundantly disclosed to Jarrow during the course of discovery and at trial.  Jarrow has not provided any reason why deposing a Caudill representative will reveal any information not already in its possession when Jarrow has previously deposed and cross-examined at trial Caudill representatives in this case.  Additionally, Jarrow provides no reason

why Caudill should produce all documents supporting its claim for damages when those documents are available to Jarrow.  (*See* DN 534-63; see also DN 518, at PageID# 35707 (Jarrow stating in its response to Caudill's motion to quash that "Jarrow's Connecticut counsel was provided electronic copies of the trial transcripts shortly after the Connecticut Action was filed . . . .").)

Jarrow makes no effort to identify specific information covered by its subpoena that was not previously disclosed during discovery or at trial.  Instead, Jarrow spends most of its response arguing that the trial transcripts and exhibits, documents that Jarrow admits are in its possession, are not protected by the agreed protective order or a sealing order.  (*See* DN 519.)  The extent to which this Court's orders protect documents disclosed during this case from Jarrow's use in the Connecticut action is not relevant to the motion to quash.  The question is whether the Court can compel Caudill as a nonparty to the Connecticut Action to disclose information requested by Jarrow in the subpoena.  Because the requests are duplicative of disclosures previously made by Caudill to Jarrow is this action, the Court is required to refrain from doing so.  *See* Fed. R. Civ. P. 26(b)(2)(C).

### b.  Motion for Sanctions

Caudill points to three acts by Jarrow that it alleges constitute sanctionable conduct: (1) Jarrow's opposition to M&E's motions to seal in the Connecticut Action; (2) Jarrow's disclosure of trial transcripts and exhibits to Elisabeth Gray; and (3) Jarrow's issuing a subpoena.

### i.  Jarrow's Opposition to M&E's Motions to Seal in the Connecticut Action

Caudill contends that Jarrow's opposition to M&E's motions to seal documents disclosed by M&E in during the September 29, 2019 prejudgment relief hearing in the Connecticut Action

constitutes a violation of the agreed protective order (DN 33).  (DN 514, at PageID# 25609-12.)  Specifically, Caudill argues that the documents disclosed by M&E were covered by the agreed protective order, and thus Jarrow's efforts to prevent their sealing violated its obligations under the agreed protective order to refrain from using the documents outside this action and to remedy any improper disclosure of the documents.  (*Id.*)

The agreed protective order provides that covered documents "shall not be disclosed or used in any way other than in connection with this action" and that if such documents are "disclosed by the receiving party, through inadvertence or otherwise, to any person or party not authorized under this Protective Order, then the receiving party shall use its best efforts" to remedy the improper disclosure.  (DN 33, at PageID# 297-98, 310-11.)  To the extent that Caudill alleges improper use of the documents disclosed by M&E, we agree with Jarrow that "Jarrow did not use the [documents] in the Connecticut Action; its adversary in the proceeding, McCarter & English did."  (DN 517, at PageID# 25660.)  To the extent that Caudill argues that Jarrow should have cooperated with Caudill's and M&E's subsequent attempts to seal the documents, Caudill misunderstands the breadth of Caudill's obligations under the agreed protective order.  Caudill argues that the agreed protective order "required [Jarrow] to take all reasonable efforts to remedy an improper disclosure."   (DN 514, at PageID# 25611.)  However, the agreed protective order only imposes remedial obligations on "*the receiving party*" for disclosures "*by the receiving party.*" (DN 33, at PageID# 310-11 (emphasis added).)  Here, because the inadvertent disclosure was by M&E, Jarrow was under no obligation to undertake efforts to remedy the disclosure.  Because Jarrow's opposition to Caudill's and M&E's efforts to seal the documents disclosed

during the prejudgment relief hearing in the Connecticut Action did not violate the terms of the agreed protective order,[2] there is no basis to impose sanctions against Jarrow on this ground.

### ii. Jarrow's Disclosure of Trial Transcripts and Exhibits to Elisabeth Gray

Sometime before the September 29, 2019 prejudgment relief hearing in the Connecticut Action, Jarrow provided its expert witness in that case, Kentucky attorney Elisabeth Gray ("Gray"), with the trial transcripts and exhibits in this case.  Caudill contends that this disclosure violated the agreed protective order (DN 33) and the provisional sealing orders (DN 488, 504).

To begin, the Court can dispose of the alleged violation of DN 504 as a basis for sanctions. In its response, Jarrow states that it disclosed the trial transcripts and exhibits to Gray before the Court issued DN 504 on September 26, 2019, noting that Gray filed a report in the Connecticut Action on September 24, 2019 indicating that she had reviewed the trial transcripts and exhibits. (DN 517, at PageID# 25662-63.)  The Court agrees with Jarrow that it would be improper to sanction Jarrow for violating an order issued after the supposed violation occurred.

The Court now turns to the agreed protective order. In its response, Jarrow argues that the agreed protective order did not preclude it from disclosing the trial transcripts and exhibits to Gray because once the documents were disclosed in open Court, they lost protection by the agreed protective order.  In support of this argument, Jarrow points to a portion of the agreed protective order that states that "[t]he restrictions set forth in this Protective Order shall not apply to information . . . which otherwise lawfully comes into the possession of, or otherwise becomes

---

[2] The Parties are not to construe this finding as bearing on the merits of M&E's motions to seal, one of which is still pending before the Connecticut court. (*See* Connecticut Action DN 128, 129.)  The Court recognizes that the terms of the agreed protective order in this case are at issue in M&E's motions. The Court's ruling does not affect the substance of that issue and merely finds that the agreed protective order did not require Jarrow to join M&E's proposed agreed protective order nor prohibit Jarrow from opposing M&E's motions to seal.

known to, the receiving party or to the public." The problem with Jarrow's argument is that at the unredacted trial exhibits and transcripts were not known to the public when Jarrow disclosed them to Gray. (*See* DN 521, at 5 ("While the courtroom was not closed, there is absolutely no evidence that anyone other than the parties, attorneys and witnesses in the case and the court personnel were in the courtroom during trial.").) At close of trial, the Court issued a provisional order ensuring that "nobody will have access to [trial exhibits] except with court permission [] [e]xcept counsel in this case." Thus, despite Jarrow's insistence that the trial relieved it of its obligations under the protective order, that is not the case. However, the Court will decline to sanction Jarrow for its violation without affording it an opportunity to correct its error. Therefore, the Court will order Jarrow to remedy its improper disclosure as set forth in the agreed protective order.

Finally, the Court addresses Caudill's argument that Jarrow's disclosure to Gray violated the Court's provisional order at DN 488. In its response, Jarrow argues that this order did not preclude it from disclosing the trial transcripts and exhibits to Gray because the Court's statements on the record could not constitute sealing orders. (DN 517, at PageID# 25657 (characterizing the Court's instructions to maintain confidentiality of trial exhibits "a brief colloquy," a "brief remark," "comments at a bench conference").)

The Court need not delve into semantics regarding what does and does not constitute a sealing order. Parties to a lawsuit are bound by directives of the Court, and that includes oral directives. *Nat'l Educ. Media, Inc. v. Elias Bros. Restaurants*, No. CIV.A. 78-73309, 1980 WL 30334, at *2 (E.D. Mich. May 5, 1980) ("[A]n agreement in Open Court need not be reduced to writing to be immediately effective.") Here, Senior Judge Simpson made clear "that nobody will have access to [the trial exhibits] except with court permission [] [e]xcept counsel in this case." (DN 488, at PageID# 21856.) He further instructed that "anybody else [who] wants to get [the

trial exhibits] will have to get court permission. [The Court Reporter] will have to ask me if somebody wants to look at it. [] That way it's still confidential."  In disclosing the trial transcripts and exhibits to Gray without authorization of the Court, Jarrow acted in direct violation of that directive.  (*Id.*)  The Court does not take lightly Jarrow's violation; however, absent evidence of bad faith, it falls short of sanctionable conduct.  Further, the remedial measures set forth in the agreed protective order are sufficient to correct the violation.  Therefore, the Court will decline to impose sanctions for this violation.

### iii.  Jarrow's Subpoena

Caudill argues that Jarrow's subpoena violated the Court's order denying Jarrow's motion to amend the agreed protective order (DN 497).  (DN 514, at PageID# 25613-14.)  In DN 497, the Court ordered "that prior to filing any future motion to amend the agreed protective order or to otherwise gain access to confidential materials in this action for use in any other action," the Parties must meet and confer and schedule a telephonic status conference with the Court.  (DN 497, at PageID# 22118.)  Caudill argues that Jarrow violated this provision in issuing the subpoena which seeks documents covered by the agreed protective order without following the procedures set forth in DN 497.  (DN 514, at PageID# 25613-14.)  In response, Jarrow argues that its subpoena does not seek to amend the agreed protective order or to use information in its possession covered by the protective order, but rather merely seeks rightfully discoverable information related to its claims in the Connecticut Action.  (DN 517, at PageID# 25633.)

While the Court is certain that documents covered by the agreed protective order fall within the scope of Jarrow's broad subpoena requests, this does not amount to clear and convincing evidence that Jarrow violated the relevant provision of DN 497.  The text of the order makes a meet and confer and telephonic status conference prerequisites to *motions practice*. (DN 497, at

PageID# 22118.)  Nothing in the order places conditions on discovery *requests*.  Therefore, there is no basis to impose sanctions against Jarrow on this ground.

### IV.   ORDER

For the foregoing reasons, Caudill's motion to quash (DN 513) is **GRANTED** and Caudill's motion for sanctions (DN 514) is **DENIED.**

Accordingly,

IT IS HEREBY ORDERED as followed:

1.  Jarrow's subpoena is quashed. Caudill shall not be required to produce documents or testimony in response to the subpoena.

2.  To the extent that Jarrow has disclosed information covered by the agreed protective order (DN 33) that is not a part of the public record to any person to which disclosure is not permitted, Jarrow shall undertake the remedial actions set forth in paragraph 21 of the agreed protective order.

Colin H Lindsay, Magistrate Judge
United States District Court

January 14, 2021
cc:  Counsel of record